DIANA L. COLEY, GERALD L. BASS, JOHN WALTER BRYANT, RONALD C. DILTHEY, AND ALL OTHER TAXPAYERS SIMILARLY SITUATED v. STATE OF NORTH CAROLINA AND NORRIS TOLSON, SECRETARY OF REVENUE

No. 607A05

(Filed 30 June 2006)

**Taxation— mid-year income tax change—other act—not retrospective**

The imposition of a tax on income is a tax on an "other act" under Article I, Section 16 of the North Carolina Constitution, which forbids the retrospective taxation of sales, purchases, or other acts previously done. However, the mid-year income tax increase at issue here is not retrospective because plaintiffs' taxable income was not fixed until the end of the tax year, so that the tax operated prospectively from the date of enactment.

Justice BRADY concurring in part and dissenting in part.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 173 N.C. App. 481, 620 S.E.2d 25 (2005), affirming an order and judgment allowing defendants' motion to dismiss entered 6 August 2004 by Judge Henry V. Barnette, Jr. in Superior Court, Wake County. Heard in the Supreme Court 13 March 2006.

*Boyce & Isley, PLLC, by G. Eugene Boyce and Philip R. Isley, for plaintiff-appellants.*

*Roy Cooper, Attorney General, by Kay Linn Miller Hobart, Special Deputy Attorney General, for defendant-appellees.*

EDMUNDS, Justice.

In this case, we consider whether the provision of the North Carolina Constitution that forbids a retrospective tax on "acts previously done" applies to a midyear tax increase on income. For the reasons given below, we hold that Article I, Section 16 of the North Carolina Constitution applies to such an increased tax but that the increase here is not unconstitutionally retrospective. Accordingly, we modify and affirm the opinion of the Court of Appeals.

On 26 September 2001, Governor Michael Easley signed into law Session Law 2001-424, titled the "Current Operations and Capital

COLEY v. STATE

[360 N.C. 493 (2006)]

Improvements Appropriations Act of 2001." Current Operations and Capital Improvements Act, ch. 424, 2001 N.C. Sess. Laws 1670. Section 34.18.(a) of this Session Law rewrote portions of N.C.G.S. § 105-134.2(a) and enacted a temporary new income tax bracket for individuals with high incomes, increasing the highest marginal tax rate from 7.75 percent to 8.25 percent. *Id.*, sec. 34.18.(a) at 2108-10. Pursuant to Section 34.18.(b), the new bracket became "effective for taxable years beginning on or after January 1, 2001" and, at the time of its passage, was scheduled to expire "for taxable years beginning on or after January 1, 2004." *Id.*, sec. 34.18.(b) at 2110.

Plaintiffs filed their 2001 personal income tax returns under protest, then on 25 April 2003 filed suit under N.C.G.S. § 105-267 in Wake County Superior Court as "citizens and taxpayers of the State of North Carolina." Plaintiffs' complaint was a purported class action on behalf of themselves and all persons similarly situated. They sought a judgment declaring that the above-cited portion of Section 34.18.(b) of Session Law 2001-424 violates the provision of Article I, Section 16 of the North Carolina Constitution that states: "No law taxing retrospectively sales, purchases, or other acts previously done shall be enacted." In addition, plaintiffs prayed for refunds on all "taxes paid on wages, earnings and other taxable income . . . for the 271 day period [from] January 1, 2001 through September 28, 2001" or, in the alternative, "refunds for all excess taxes paid on acts done during the entire year." The matter was designated as exceptional by the Chief Justice pursuant to Rule 2.1 of the General Rules of Practice for the Superior and District Courts.

Defendants filed consolidated motions to dismiss and to strike portions of the complaint. Plaintiffs subsequently filed motions for judgment on the pleadings and for summary judgment. Following a hearing on all these motions, the trial court filed a memorandum of decision and on 6 August 2004 entered an order denying plaintiffs' motion for summary judgment and allowing defendants' motion to dismiss pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6). Plaintiffs entered notice of appeal to the Court of Appeals and, on 4 October 2005, a divided panel affirmed the trial court's ruling. *Coley v. State*, 173 N.C. App. 481, 620 S.E.2d 25 (2005). Plaintiffs appeal to this Court on the basis of the dissent.

We review the trial court's dismissal of plaintiffs' suit to determine "whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory." *Thompson v. Waters*, 351 N.C. 462, 463, 526 S.E.2d

650, 650 (2000). Plaintiffs contend that Section 34.18 of Session Law 2001-424 is retrospective because it requires payment of taxes on income earned from 1 January 2001 to the date of the law's signing on 26 September 2001, thereby taxing income-producing "acts previously done." Defendants respond that the legislation taxes income, not "acts," and thus falls outside the purview of the constitutional prohibition. Accordingly, we must make two related inquiries. First, is Session Law 2001-424 a tax upon acts, or, phrased differently, does Article I, Section 16 apply to an increase in income tax rates? Second, if so, does Session Law 2001-424 tax retrospectively? *See Unemployment Comp. Comm'n v. Wachovia Bank & Tr. Co.*, 215 N.C. 491, 501, 2 S.E.2d 592, 599 (1939).

The genesis of the constitutional provision in question was legislation creating criminal liability for failure to pay taxes on previous purchases. *See* John V. Orth, *The North Carolina State Constitution: A Reference Guide* 53 (1993) [hereinafter Orth, *State Constitution*] (noting that the rationale for the ban on retrospective tax laws "would seem to be similar to that for . . . retrospective criminal laws"). Specifically, in *State v. Bell*, this Court upheld the conviction of the defendant, a merchant who refused to pay a tax levied on all purchases made by those "buying or selling goods, wares or merchandise of whatever name or description." 61 N.C. 78, 81, 61 N.C. (Phil.) 76, 80 (1867). Although the statute was ratified on 18 October 1865, it "was to apply and operate during the twelve months next preceding the first of January, 1866." *Id.* at 82, 61 N.C. (Phil.) at 80. The defendant offered to pay the tax on his purchases made after 18 October 1865, but he refused to pay taxes on purchases before that date and was convicted of a misdemeanor. *Id.* at 82, 61 N.C. (Phil.) at 81.

On appeal, the defendant argued that the tax was unconstitutional and void either as an *ex post facto* law or as a retrospective law "against the spirit . . . of the Constitution." *Id.* at 82-83, 61 N.C. (Phil.) at 81-82. We observed that *ex post facto* laws apply only "to matters of a criminal nature" and held that the law was prospective "in respect to [the defendant's] criminality" because the defendant could avoid all criminal liability by paying the tax. *Id.* at 83, 61 N.C. (Phil.) at 81-82. We then discussed the State's "large and essential power" to tax, *id.* at 85, 61 N.C. (Phil.) at 86, and reasoned that without some particular "repugnancy to the Constitution of the United States or of the State," *id.* at 84, 61 N.C. (Phil.) at 83, we could "see nothing to prevent the people from taxing themselves [retrospectively], either

**COLEY v. STATE**

[360 N.C. 493 (2006)]

through a convention or a legislature," *id.* at 85-86, 61 N.C. (Phil.) at 86. Accordingly, the defendant's conviction was affirmed.

Shortly after we issued our opinion in *Bell,* the North Carolina Constitutional Convention of 1868 convened. The Journal from the Convention illustrates that preliminary versions of the draft Constitution contained in the Declaration of Rights a provision against *ex post facto* laws. *Journal of the Constitutional Convention of the State of North Carolina* 168, 213 (Raleigh, Joseph W. Holden 1868) [hereinafter *Convention Journal*]. However, the provision did not include a prohibition against retrospective taxation until delegate William B. Rodman,[1] an attorney, moved to add the following language: "No law taxing retrospectively sales, purchases, or other acts previously done ought to be passed." *Id.* at 216. As detailed below, plaintiffs argue that Rodman's personal papers[2] indicate that he was aware of the *Bell* decision and suggest that the holding in that case influenced his motion. Rodman's amendment was adopted, and the final version, "Retrospective laws, punishing acts committed before the existence of such laws, and by them only declared criminal, are oppressive, unjust, and incompatible with liberty; wherefore, no *ex post facto* law ought to be made. No law taxing retrospectively, sales, purchases, or other acts previously done, ought to be passed[,]" appeared in Article I, Section 32 of the Constitution approved in April of 1868. *Id.* at 216, 230; *see also* Orth, *State Constitution* 13.

In November of 1970, North Carolina voters ratified a revised and amended state constitution generally known as the 1971 Constitution. *See Stephenson v. Bartlett,* 355 N.C. 354, 367, 562 S.E.2d 377, 387 (2002) (citing John L. Sanders, *Our Constitutions: An Historical Perspective, in* Elaine F. Marshall, N.C. Dep't of Sec'y of State, *North Carolina Manual 1999-2000,* at 125, 134). Article I, Section 32, while remaining in the Declaration of Rights, was renumbered as Section 16 and the language slightly altered, with the word "shall" replacing "ought to." N.C. Const. art. I, § 16.

---

1. Rodman later served as an Associate Justice on this Court and authored at least two opinions concerning taxation. *See Young v. Town of Henderson,* 76 N.C. 420 (1877); *Pullen v. Comm'rs of Wake Cty.,* 66 N.C. 361 (1872).

2. Plaintiffs' complaint included as exhibits copies of Rodman's papers. Later, with plaintiffs' consent, the trial court struck portions of these exhibits. Plaintiffs cite us to these exhibits in their brief and arguments. Because our review of the issue of constitutional interpretation at bar is *de novo, see Piedmont Triad Airport Auth. v. Urbine,* 354 N.C. 336, 338, 554 S.E.2d 331, 332 (2001), *cert. denied,* 535 U.S. 971, 152 L. Ed. 2d 381 (2002), we will review all parts of the record that might assist our analysis.

Plaintiffs contend that the increased income tax imposed in Session Law 2001-424 violates this provision. They take an historical approach, arguing that Rodman's papers demonstrate that he proposed amendments to the 1868 Constitutional Convention relating to retrospective taxation. According to plaintiffs, under Rodman's leadership, the Convention initially considered an amendment to Article I, Section 32 stating that "sales, purchases and other transactions previously done" could not be taxed retrospectively, but ultimately chose to use the broader term "other acts" in lieu of "other transactions." Plaintiffs then maintain that the Convention's decision to use the more expansive term "acts" signals the Framers' intent that the earning of income is an "other act[]" that cannot be taxed retrospectively.

Although the papers cited by plaintiffs are provocative and may well reflect the evolution of Rodman's thoughts as he experimented with alternative versions of his amendment, the Journal of the Convention does not indicate that the term "transactions" was ever proposed or that the delegates in session ever considered it. The strongest implication of the papers, read in light of the *Bell* opinion, is that Rodman was more concerned with the retrospective nature of a tax than with the subject of a tax. *See also* Henry G. Connor & Joseph B. Cheshire, Jr., *The Constitution of The State of North Carolina Annotated* 105 (1911) ("Before the adoption of this clause by the Convention of 1868, laws, taxing retrospectively acts previously done, were valid."). Ultimately, we are able to conclude with confidence no more than that Rodman proposed an amendment to then-Article I, Section 32 containing a ban on retrospective taxation on "sales, purchases, or other acts previously done" and that the amendment was adopted. *Convention Journal* 216.

Plaintiffs also argue that *Young v. Town of Henderson,* 76 N.C. 420 (1877), written by Rodman after he joined this Court, supports their position. However, the tax involved in *Young* was levied on "merchandise *purchased*" in the approximately twelve months prior to the enactment of the tax, and such a tax was expressly forbidden by Article I, Section 32. *Id.* at 423-24 (emphasis added). Accordingly, *Young* is inapposite to the present case.

Although we decline to adopt plaintiffs' historical analysis, we nevertheless must determine the proper interpretation of this constitutional provision. The principles governing constitutional interpretation are generally the same as those " ' "which control in ascertaining the meaning of all written instruments." ' " *Stephenson,* 355

N.C. at 370, 562 S.E.2d at 389 (citation omitted). In determining the will or intent of the people as expressed in the Constitution, " 'all cognate provisions are to be brought into view in their entirety and so interpreted as to effectuate the manifest purposes of the instrument.' " *State ex rel. Martin v. Preston*, 325 N.C. 438, 449, 385 S.E.2d 473, 478 (1989) (quoting *State v. Emery*, 224 N.C. 581, 583, 31 S.E.2d 858, 860 (1944)); *see also Perry v. Stancil*, 237 N.C. 442, 444, 75 S.E.2d 512, 514 (1953) ("Constitutional provisions should be construed in consonance with the objects and purposes in contemplation at the time of their adoption."). *See generally* 5A Strong's North Carolina Index 4th: *Constitutional Law* §§ 8-9 (2000).

If the meaning of the language of Article I, Section 16 is plain, we must follow it. *Martin v. State*, 330 N.C. 412, 416, 410 S.E.2d 474, 476 (1991); *see also Preston*, 325 N.C. at 449, 385 S.E.2d at 479 ("In interpreting our Constitution[,] . . . where the meaning is clear from the words used, we will not search for a meaning elsewhere."). Here, the second sentence of Article I, Section 16 states: "No law taxing retrospectively sales, purchases, *or other acts* previously done shall be enacted." N.C. Const. art. I, § 16 (emphasis added). While the language is straightforward enough, we cannot in good faith find that the phrase "other acts" is unambiguous on its face and that it unquestionably covers an increase in income tax. Accordingly, we will consider both the context in which this language appears and our precedent. *See Preston*, 325 N.C. at 449, 385 S.E.2d at 478 (" 'The best way to ascertain the meaning of a word or sentence in the Constitution is to read it contextually and to compare it with other words and sentences with which it stands connected.' " (quoting *Emery*, 224 N.C. at 583, 31 S.E.2d at 860)); *Elliott v. State Bd. of Equalization*, 203 N.C. 749, 753, 166 S.E. 918, 921 (1932) ("[W]e may have recourse to former decisions, among which are several dealing with the subject under consideration.").

As to the phrase "other acts" in the context of Article I, Section 16, while we are not persuaded by plaintiffs' interpretation of the historical record, we agree with their observation that the phrase "other acts" is broader than the preceding terms in the sentence, "sales" and "purchases." N.C. Const. art I, § 16. The drafters did not choose a limiting term, but instead used language that can encompass a range of conduct. *See Elliott*, 203 N.C. at 753, 166 S.E. at 921 ("[W]e may resort to the natural significance of the words employed and if they embody a definite meaning and involve no absurdity or contradiction we are at liberty to say that the meaning apparent on the face of the instru-

ment is the one intended to be conveyed."). Thus, we are satisfied that the use of the expansive term "other acts" in the Constitution indicates that the drafters intended an inclusive interpretation of the phrase. Accordingly, we believe that the earning of income is such an "other act[]" covered by Article I, Section 16.

Our contextual interpretation is supported by one of the few other cases from this Court construing the language of Article I, Section 16. In *Unemployment Compensation Commission v. Wachovia Bank & Trust Co.*, we addressed the meaning of "other acts" in the context of the North Carolina Unemployment Compensation Law. 215 N.C. at 499-501, 2 S.E.2d at 598-99; *see also* Unemployment Compensation Law, ch. 1, 1936 N.C. Pub. [Sess.] Laws 1 (Extra Sess. 1936). Ratified by the General Assembly on 16 December 1936, this public law required "contributions" from employers "with respect to wages payable for employment" beginning with the 1936 calendar year. Ch. 1, sec. 7.(a), 1936 N.C. Pub. [Sess.] Laws (Extra Sess. 1936) at 8. Employers affected were those that on or subsequent to 1 January 1936, "had in [their] employ one or more individuals performing services for [them] within this State." *Id.*, sec. 19(e) at 24. In addition, employers were subject to the tax if "in each of twenty different weeks within either the current or the preceding calendar year . . . [they] had in employment, eight or more individuals." *Id.*, sec. 19(f) at 25.

The defendant bank argued that the tax was unconstitutionally retrospective because the public law, while not ratified until 16 December 1936, required that each employer make contributions for all of 1936. *Unemployment Comp. Comm'n*, 215 N.C. at 499-500, 2 S.E.2d at 598. Although we agreed with the defendant's argument, *Unemployment Compensation Commission* is now particularly pertinent because of the nature of the arguments made to us in that case.

The defendant in *Unemployment Compensation Commission* maintained that the public law then at issue, the Unemployment Compensation Law, impermissibly imposed a retrospective tax on "other acts previously done." In response, the plaintiff state agency argued in its brief to this Court that, in construing the predecessor to Article I, Section 16, "[u]nder the rule of statutory construction, EJUSDEM GENERIS, where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable to persons and things of the same general nature or class as those specifically enumerated" and therefore the term "acts" had a meaning that conformed to the definitions of

"sales" and "purchases." Based on this canon, the plaintiff contended that the tax in question was not imposed on an "other act[]" and accordingly that language in Article I, Section 32 did not even apply to the public law.

Defendants here similarly argue that, under the doctrine of *ejusdem generis*, the term "other acts" should be read restrictively because it appears in a series with the terms "sales" and "purchases" and therefore is not applicable to a tax on income. In the following discussion, we assume without deciding that the canon of *ejusdem generis* extends to constitutional interpretation. *See Baker v. Martin*, 330 N.C. 331, 337, 410 S.E.2d 887, 891 (1991).

We apparently concluded that the canon was not applicable in *Unemployment Compensation Commission* because the doctrine is not mentioned in the opinion. Instead, we held in that case that Article I, Section 32 applied to the public law in question, observing that the required "contributions [were] in the nature of a tax . . . based upon the act of contracting for employment and the payment of wages for services rendered." *Unemployment Comp. Comm'n*, 215 N.C. at 501, 2 S.E.2d at 599. Moreover:

> [T]he requirement that employers make contributions "in respect to employment" is *in effect a tax upon an act or acts*. If it be considered a tax upon the maintenance of the status of an employer, *even then it is essentially a tax upon an act*. To maintain the status of an employer one must employ and pay wages.

*Id.* (emphases added). Thus, in 1939, we declined the express opportunity to limit the phrase "other acts" as similarly proposed here by defendants. We will follow our lead from that case and conclude that if "the maintenance of the status of an employer" constitutes an act that falls within the scope of Article I, Section 16, the term "other acts" applies equally to income-producing activities.

In sum, the Constitution should be given an interpretation "based upon broad and liberal principles designed to ascertain the purpose and scope of its provisions." *Elliott*, 203 N.C. at 753, 166 S.E. at 920-21; *see also Perry*, 237 N.C. at 444, 75 S.E.2d at 514. Accordingly, consistent both with the intent of the drafters and with our own precedent, we hold that the imposition of a tax on income is a tax on an "other act[]" under Article I, Section 16.

We next address whether Session Law 2001-424 impermissibly enacted a law "taxing retrospectively." N.C. Const. art. I, § 16. Plain-

tiffs point out that Section 34.18.(b) of Session Law 2001-424 states that the "section becomes effective for taxable years beginning on or after January 1, 2001, and expires for taxable years beginning on or after January 1, 2004." Ch. 424, sec. 34.18.(b), 2001 N.C. Sess. Laws at 2110. Plaintiffs contend that for the nine months between the beginning of 2001 and the enactment of the statute on 26 September 2001, they paid the then-required 7.75 percent "tax on income from their sales and purchases of capital assets and on their income earned from labor," but that the higher tax rate in "Session Law 2001-424 imposed a new duty on taxpayers with respect to these past transactions." Defendants respond that the law operated prospectively because the taxable period had not closed as of the date of enactment and therefore the taxpayers' "net income" did not yet exist.

"The power to tax is the highest and most essential power of the government, and is an attribute of sovereignty, and absolutely necessary to its existence." *New Hanover Cty. v. Whiteman*, 190 N.C. 332, 334, 129 S.E. 808, 809 (1925); *see also Pullen v. Comm'rs of Wake Cty.*, 66 N.C. 361, 362 (1872). Article V, Section 2 of the North Carolina Constitution addresses state and local taxation. The income tax provision, found in subsection (6), limits the rate of tax on incomes to a maximum of ten percent and provides that "there shall be allowed personal exemptions and deductions so that only *net incomes* are taxed." N.C. Const. art. V, § 2(6) (emphasis added).

Section 105-134.2 of the North Carolina General Statutes imposes the individual income tax authorized by the Constitution and sets out the applicable percentages of the taxpayer's North Carolina taxable income to be used in computing the tax. N.C.G.S. § 105-134.2 (2005). Section 34.18.(a) of Session Law 2001-424 rewrote a substantial portion of N.C.G.S. § 105-134.2(a) by substituting tables that reflected a new upper income tax bracket and marginal rate increase. Ch. 424, sec. 34.18.(a), 2001 N.C. Sess. Laws at 2108-10. Otherwise, relevant portions and language of the Individual Income Tax Act generally remained the same and continue in force. *Compare* N.C.G.S. §§ 105-134 to -134.7 (2001) (superseded) *with* N.C.G.S. §§ 105-134 to -134.7 (2005).

The State individual income tax "is imposed upon the North Carolina taxable income of every individual" and is "levied, collected, and paid annually." N.C.G.S. § 105-134.2(a). According to N.C.G.S. § 105-134.1(16), the definition of "taxable income" is found in section 63 of the Internal Revenue Code ("the Code"). In general, the Code defines taxable income as "gross income minus the deductions

allowed by [that] chapter," I.R.C. § 63(a) (2000), or, for the "individual who does·not elect to itemize his deductions for the taxable year, . . . [as] adjusted gross income, minus . . . the standard deduction . . . and . . . the deduction for personal exemptions," *id.* § 63(b) (2000); *see also id.* § 61 (2000) (defining "gross income"); *id.* § 62 (2000) (defining "adjusted gross income"). A resident taxpayer's "North Carolina taxable income" is one's federal taxable income determined under the Code as adjusted by N.C.G.S. §§ 105-134.6 and 105-134.7. *See* N.C.G.S. § 105-134.5 (2005) ("North Carolina taxable income defined.").

North Carolina taxable income is calculated "on the basis of the *taxable year* used in computing the taxpayer's income tax liability under the Code." *Id.* § 105-134.4 (2005) (emphasis added); *see also id.* § 105-134.1(17) (2005) (defining "taxable year" as provided in section 441(b) of the Code); *id.* § 105-134.3 (2005) (stating that except as provided in Article 4A, the income tax imposed "shall be assessed, collected, and paid in the taxable year following the taxable year for which the assessment is made"). Section 441(b) of the Code indicates that the term "taxable year" can assume several meanings, including, *inter alia*, "the taxpayer's annual accounting period" if the period is either a calendar or fiscal year, or "the calendar year" if subsection (g) applies to the taxpayer. I.R.C. § 441(b) (2000). *See generally* Boris I. Bittker et al., *Federal Income Taxation of Individuals* ¶ 39.01[1]-[2], at 39-3 to -5 (3d ed. 2002) (introducing the basic principles of tax accounting methods and discussing the "taxable year"). These statutes demonstrate that the concepts of "income" and "taxable year" are intertwined and that income is determined and the North Carolina tax thereon is imposed on an annual basis. *See* N.C.G.S. § 105-134 (2005) ("The general purpose of this Part is to impose a tax for the use of the State government upon the taxable income collectible annually . . . ."); *id.* § 105-134.2(a) ("The tax shall be levied, collected, and paid annually . . . .").

Citing portions of Articles 4 ("Income Tax") and 4A ("Withholding; Estimated Income Tax for Individuals") in The Revenue Act, plaintiffs argue that income taxes are not paid annually upon the filing of the April 15 tax return. *See id.* §§ 105-133 to -163.24 (2005). Plaintiffs instead point out that many taxpayers either have taxes withheld from their wages or make estimated quarterly payments and often overpay so that they are due a refund when they file their April 15 tax returns. Plaintiffs contend that these and other similarly situated taxpayers are paying their income taxes as the income is earned.

Consequently, according to plaintiffs, the tax in question is retrospective because it increases the tax on income that has already been earned and for which the tax was due when earned.

However, a close reading of Article 4A reveals that a taxpayer's final income tax liability is not fixed until the taxpayer's annual income is determined. For example, while N.C.G.S. § 105-163.2(a) mandates that employers withhold "from the wages of each employee the State income taxes payable by the employee on the wages," the amount withheld by the employer is an "approximat[ion] [of] the employee's income tax liability under Article 4." *Id.* § 105-163.2(a). In addition, this statute advises employers how to calculate "an employee's *anticipated* income tax liability." *Id.* (emphasis added). We do not necessarily disagree with plaintiffs' labeling of such withholding and estimated tax provisions as "pay-as-you-go" tax collection, but this characterization does not trump the language of either our prior opinions or the pertinent statutes in Chapter 105, Article 4, Part 2 of the North Carolina General Statutes. *See* N.C.G.S. § 105-163.24 (requiring that Article 4A "be liberally construed in pari materia with Article 4"). As we previously observed:

> The withholding of taxes by the employer is based on an estimate of the employee's ultimate tax liability; an employee's *tax liability is not established until the employee files a tax return for the particular tax year.* The actual tax liability may vary depending on numerous factors, such as, the amount of any itemized deductions, the number of the taxpayer's dependents, and the amount of any other income.

*Evans v. AT&T Techs., Inc.*, 332 N.C. 78, 89, 418 S.E.2d 503, 510 (1992) (emphasis added). While we acknowledge that this statement was made in the context of a discussion of deductions and credits allowed to employers for payments to injured employees and that the issue of when income taxes are due was not then before us, the quoted language is consistent with our holding that a taxpayer's North Carolina taxable income and ultimate tax liability or overpayment are indeterminate until the close of the taxable year.

Accordingly, we agree with defendants that Session Law 2001-424 as codified in N.C.G.S. § 105-134.2(a) does not tax plaintiffs retrospectively. The subject of the enacted tax is the "North Carolina taxable income" of the individual taxpayer which, by statutory definition, is computed "on the basis of the taxable year." N.C.G.S. § 105-134.4. Regardless of whether one's taxable year pursuant to

section 441(b) of the Code is determined by the taxpayer's annual accounting period or by the calendar year, a citizen's taxable income and corresponding tax liability or overpayment are not fixed until the close of that year. *See United States v. Consol. Edison Co. of N.Y.*, 366 U.S. 380, 384, 6 L. Ed. 2d 356, 360 (1961) ("It is settled that each 'taxable year' must be treated as a separate unit, and all items of gross income and deduction must be reflected in terms of their posture at the *close of such year*." (emphasis added)), *superseded by statute on other grounds as stated in Consol. Freightways, Inc. v. Comm'r*, 708 F.2d 1385, 1392 (9th Cir. 1983). Because plaintiffs' taxable income was not fixed at the date of enactment, the midyear tax rate increase implemented by Session Law 2001-424 was not levied until the conclusion of the taxable year. Consequently, the tax at issue operated prospectively from the date of enactment and does not violate Article I, Section 16 of the North Carolina Constitution.

Based on the foregoing, the opinion of the Court of Appeals affirming the trial court's grant of defendants' motion to dismiss is affirmed as modified.

MODIFIED AND AFFIRMED.

Justice BRADY, concurring in part and dissenting in part.

While I fully concur with the majority's conclusion that income taxation is encompassed by Article I, Section 16 of the North Carolina Constitution, I am compelled to dissent as to the majority's determination that the tax increase at issue is not retrospective. The majority holds a tax rate increase on previously completed income-producing acts is a prospective tax. The necessary conclusion which emanates from the majority's opinion is that the act of earning income does not occur until the end of the taxable year. This result defies logic.

An "act" is defined as "a thing done or being done." *Webster's Third New International Dictionary* 20 (16th ed. 1971). The definition of "retrospective" is "contemplative of or relative to past events." *Id.* at 1941. Thus, to retrospectively tax an act means to tax a completed "thing" done in the past. The plain language of Article I, Section 16 prohibits the subsequent taxation of completed acts which either produce some sort of profit or entitle an individual to the receipt of income.

## COLEY v. STATE

[360 N.C. 493 (2006)]

It is instructive to note the provision prohibiting retrospective taxation appears in the same section as the North Carolina constitutional prohibition against the enactment of ex post facto laws. While it is clear the prohibition on ex post facto laws applies only to criminal law, and not to civil laws, the concept behind the ban on both retrospective taxation and ex post facto criminal laws is strikingly similar. As a preeminent North Carolina constitutional law scholar has noted: "The rationale [for the Article I, Section 16 prohibition on retrospective taxation] would seem to be similar to that for the ban on retrospective criminal laws. To the extent one could have avoided the event that is taxed, it is unjust not to give the taxpayer the chance." John V. Orth, *The North Carolina State Constitution with History and Commentary* 53 (1995). Following this analysis, it would seem "unjust not to give the taxpayer the chance" to avoid an income-producing activity before imposing an increased tax on that activity. *Id.* Unless the majority has access to H.G. Wells's time machine, the acts performed by plaintiffs before the passage of this tax rate increase cannot be undone. Adherence to Article I, Section 16 allows the citizen to plan his or her dealings based upon the tax structure as it exists at the time the income-producing act is performed. An arbitrary definition of "earning income" created for administrative convenience robs the citizen of the opportunity to plan and shackles the taxpayer with an increased financial burden. I cannot turn a blind eye, as the majority does, to the lengthy nine month period covering this retrospective tax rate increase, which blatantly ignores the people's expectation of stable and predictable taxation.

This Court's precedent surrounding Article I, Section 16 strongly supports the proposition that this provision's purpose is to prohibit the retrospective taxation of *finite* acts—epitomized by mercantile activities. One need look no further than the origin of the Article I, Section 16 prohibition on retrospective taxation to understand which activities the drafters meant to protect through this constitutional provision. Article I, Section 16 was amended in direct response to *State v. Bell*, 61 N.C. 78, 61 N.C. (Phil.) 76 (1867). In *Bell*, the Court was compelled to hold a retrospective tax on merchant activity constitutionally permissible because the Court found nothing in the North Carolina Constitution to prevent such legislation. *Id.* at 82-86, 61 N.C. (Phil.) at 81-86.

The finite merchant activities in *Bell* which prompted the amendment were very similar to those activities being retrospectively taxed

in *Young v. Town of Henderson*, 76 N.C. 420, 423-24 (1877). Yet, the outcome was very different in *Young*. The Court, applying the then new Article I, Section 16 prohibition on retrospective taxation for the first time, found the retrospective taxation of the finite merchant activities to be unconstitutional. *Id.* at 424. We can confidently rely, from this Court's precedent interpreting Article I, Section 16, that merchant-like activities, which are complete the moment they occur, cannot be retrospectively taxed.

The earning of income is very similar to the merchant activities subjected to what is now unconstitutional retrospective taxation as addressed in *Bell* and *Young*. North Carolinians are all merchants of their labor, and therefore the completion of a commercial mercantile transaction is essentially the same as the completion of one month, one day, or one hour of an individual's toil and labor. Whether a merchant sells a product or an individual supplies eight hours of manual labor, an act has been completed. In both cases someone is entitled to, if not immediately presented with, some sort of compensation and incurs a corresponding tax obligation. The retrospective tax rate increase on completed income-producing activities, like the retrospective taxation of completed merchant transactions, violates Article I, Section 16.

In this regard, it seems illogical to cast aside the true definition of an income-producing act in favor of the General Assembly's annual perspective on income-producing activities, as the majority does today. Were the General Assembly to tax income on a twelve year basis, would the public be subject to new taxes on income-producing acts that were completed nine years ago? In the simplest terms, the majority condones the General Assembly's unconstitutional increase of the tax rate on income-producing activities up to nine months after completion of the activities subject to taxation. Simply because the State chooses to tax income on an annual basis does not negate the fact that income is truly earned moment by moment. I do not believe the General Assembly's use of the word "annual" with regards to taxing income magically relieves the Assembly of its constitutional duty to refrain from retrospectively taxing acts. I respectfully dissent.