IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-58

No. 60A20

Filed 11 June 2021

ASHLEY DEMINSKI, as guardian ad litem on behalf of C.E.D., E.M.D., and K.A.D.

v.

THE STATE BOARD OF EDUCATION and THE PITT COUNTY BOARD OF EDUCATION

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 269 N.C. App. 165, 837 S.E.2d 611 (2020), reversing an order denying defendant's motion to dismiss in part entered on 3 July 2018 by Judge Vince M. Rozier, Jr., in Superior Court, Wake County. On 3 June 2020, the Supreme Court allowed defendant's petition for discretionary review of additional issues. Heard in the Supreme Court on 23 March 2021.

*Fox Rothschild LLP, by Troy D. Shelton, Matthew Nis Leerberg, and Ashley Honeycutt Terrazas, for plaintiff-appellant.*

*Tharrington Smith, LLP, by Deborah R. Stagner, and Poyner Spruill LLP, by Edwin M. Speas, Jr. and Caroline P. Mackie, for defendant-appellee Pitt County Board of Education.*

*Daniel K. Siegel and Kristi L. Graunke for ACLU of North Carolina Legal Foundation, amicus curiae.*

*Lisa Grafstein and Virginia Fogg for Disability Rights North Carolina, amicus curiae.*

*Perry Legal Services, PLLC, by Maria T. Perry, and Lawyers' Committee for Civil Rights Under Law, by Mark Dorosin and Elizabeth Haddix, for North Carolina Advocates for Justice, amicus curiae.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Elizabeth L. Troutman and Jill R. Wilson, and North Carolina School Boards Association, by Allison Brown Schafer, for North Carolina School Boards Association, amicus curiae.*

NEWBY, Chief Justice.

¶ 1    In this case we consider whether an individual may bring a claim under the North Carolina Constitution for a school board's deliberate indifference to continual student harassment. As alleged, this indifference denied students their constitutionally guaranteed right to the opportunity to receive a sound basic education. Article I, Section 15 of the North Carolina Constitution provides that "[t]he people have a right to the privilege of education, and it is the duty of the State to guard and maintain that right." Where a government entity with control over the school is deliberately indifferent to ongoing harassment that prevents a student from accessing his constitutionally guaranteed right to a sound basic education, the student has a colorable claim under the North Carolina Constitution. Thus, governmental immunity does not bar the claim. Because plaintiff's complaint sufficiently alleges a violation here, we hold that the trial court correctly denied defendant's motion to dismiss. As such, we reverse the decision of the Court of Appeals.

¶ 2    Because this case involves a motion to dismiss, we take the following allegations as true from plaintiff's complaint. Plaintiff is the mother of three minor

children, E.M.D., K.A.D., and C.E.D. (plaintiff-students), who were students at Lakeforest Elementary School in Pitt County. E.M.D. and K.A.D. are diagnosed with autism. Over a period of several months during the fall semester of the 2016–2017 school year, C.E.D. was bullied and sexually harassed by other students. Throughout the school day, Student #1 and Student #2 would grab C.E.D. by the shoulders and push her spine so that she was in pain and had trouble breathing and swallowing. Student #3 would stare at C.E.D., interrupt her during tests and other assignments, and repeatedly talk to her during instructional time. The complaint also alleges the following:

> 13. Student #3 sexually harassed C.E.D. repeatedly during the school day:
>
> > a. On multiple occasions, Student #3 put his hands in his pants to play with his genitals in C.E.D.'s presence;
> >
> > b. On multiple occasions, Student #3 informed C.E.D. he "f**** like a gangster";
> >
> > c. On multiple occasions, Student #3 informed C.E.D. he "want[s] to f*** [another student] from night to morning";
> >
> > d. On multiple occasions, Student #3 informed C.E.D. he has "got something special for you" before putting his hands in his pants to play with his genitals;
> >
> > e. On multiple occasions, Student #3 would play with his genitals and then attempt to touch C.E.D.;

    f.  On at least one occasion, on or about 6 October 2016, Student #3 pulled down his pants in the hallway in C.E.D.'s presence to expose his penis and wiggle it to simulate masturbation; and,

    g.  On at least one occasion, Student #3 pulled down his pants in the classroom in C.E.D.'s presence to expose his penis and show it to her.

. . . .

15. Student #4, perhaps encouraged by Student #3's lewd conduct going unaddressed, sexually harassed C.E.D. repeatedly:

    a.  On multiple occasions, Student #4 would tell C.E.D. and other students that he and C.E.D. were dating and intimate;

    b.  On at least one occasion, Student #4 rolled a piece of paper to approximate a penis and made motions simulating masturbation while in C.E.D.'s presence; and,

    c.  On at least one occasion, on or about 21 October 2016, Student #4 rolled a piece of paper to approximate a penis, put it in his pants, walked over to C.E.D. and attempted to show C.E.D. how to insert himself into C.E.D.'s vagina. When C.E.D. attempted to get away from Student #4 and move to another seat, Student #4 attempted to reposition himself to attempt to get under where C.E.D. would be sitting.

Meanwhile, E.M.D. and K.A.D. were also enrolled in classes with student #3. Both children experienced similar treatment from Student #3, "including sexual conduct, constant verbal interruptions laced with vulgarity, and physical violence

including knocking students' items onto the floor, throwing objects, and pulling books and other items off shelves onto the ground."

C.E.D. repeatedly informed her teacher about the incidents with all four students. C.E.D also informed plaintiff, and plaintiff repeatedly notified the teacher, assistant principal, and principal of the situation. Defendant, the Pitt County Board of Education, also knew of the incidents.[1] Nonetheless, while school personnel insisted that there was a "process" that would "take time," the bullying and harassment continued with no real change. On one occasion, attempting to resolve Student #3's harassment of C.E.D., school personnel adjusted Student #3's schedule to give him additional time in E.M.D. and K.A.D.'s classes.

In October 2016, plaintiff transferred C.E.D., E.M.D., and K.A.D. to a new school, which was initially designated as a transfer only for the 2016–2017 school year. The transfer was later modified to be valid for as long as plaintiff and plaintiff-students resided at their then-current address.

On 11 December 2017, plaintiff filed a complaint in Superior Court, Wake County, based on the allegations above. Plaintiff brought a claim under Article I,

---

[1] Plaintiff also named the State Board of Education as a defendant in this action. Both parties moved to dismiss at the trial court, and that court granted the State Board of Education's motion in full. Thus, the Pitt County Board of Education is the only defendant to this appeal. "Defendant" in this opinion refers only to the Pitt County Board of Education.

Section 15, and Article IX, Section 2 of the North Carolina Constitution.[2] Plaintiff's complaint alleges:

> 31. Article I, Section 15 and Article IX, Section 2 of the North Carolina State Constitution jointly guarantee each child the right to a "sound basic education." . . . .
>
> 32. The [plaintiff-students] were each denied their rights to a sound basic education as a result of being in a hostile academic environment where they were subjected to verbal and physical harassment, and in C.E.D.'s case to physical abuse and prolonged sexual harassment.
>
> 33. Defendants had substantial control over the harassing conduct.
>
> 34. The harassing conduct was severe and discriminatory.
>
> 35. Defendants had actual knowledge of the harassing conduct.
>
> 36. Defendants exhibited deliberate indifference to the harassing conduct.
>
> 37. The [plaintiff-students] were each damaged as a result of the Defendants' violations . . . .

Plaintiff seeks compensatory and punitive damages, a permanent injunction preventing defendant from assigning or requiring plaintiff-students to attend Lakeforest Elementary, attorneys' fees, and any additional relief that the trial court deems proper and just.

---

[2] Plaintiff also brought a claim for defendant's alleged violation of the North Carolina School Violence Prevention Act (SVPA). The trial court granted defendant's motion to dismiss that claim. Plaintiff did not appeal that portion of the trial court order.

¶ 7      Defendant moved to dismiss, arguing in part that the constitutional claim is barred by the defense of sovereign or governmental immunity. The trial court denied defendant's motion in part, allowing the claim under the North Carolina Constitution to proceed. Defendant appealed.

¶ 8      A divided panel of the Court of Appeals reversed the trial court's order denying defendant's motion to dismiss. *Deminski v. State Bd. of Educ.*, 269 N.C. App. 165, 166, 837 S.E.2d 611, 612 (2020). The Court of Appeals first determined that defendant's appeal from the trial court's denial of the motion to dismiss, though interlocutory, was immediately appealable. *Id.* at 169, 837 S.E.2d at 614. In doing so, the Court of Appeals reasoned that the trial court's denial affected defendant's substantial right to the defense of governmental immunity, should it apply here. *Id.*

¶ 9      The Court of Appeals next recognized that an individual may bring a direct claim under the North Carolina Constitution where her rights have been abridged but she is without an adequate state law remedy. *Id.* at 170, 837 S.E.2d at 615 (citing *Corum v. Univ. of N.C.*, 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992)). The Court of Appeals also recognized that the right to education as provided in the North Carolina Constitution includes the right to a sound basic education. *Id.* at 171–72, 837 S.E.2d at 615–16 (citing *Leandro v. State*, 346 N.C. 336, 345, 488 S.E.2d 249, 254 (1997)). The Court of Appeals then compared the present case to *Doe v. Charlotte-Mecklenburg Board of Education*, 222 N.C. App. 359, 731 S.E.2d 245 (2012)

(concluding that the plaintiff's complaint alleging constitutional violations under, *inter alia*, Article I, Section 15 was insufficient to state a colorable constitutional claim). Though *Doe* involved claims of negligence arising from a teacher's sexual relationship with a high school student, the Court of Appeals concluded that, similar to its understanding of *Doe*, "abuse . . . or an abusive classroom environment" does not violate a constitutional right to education. *Deminski*, 269 N.C. App. at 174, 837 S.E.2d at 617. In the Court of Appeals' view, the constitutional guarantee extends no further than an entity affording a sound basic education by making educational opportunities available. *Id.* at 173, 837 S.E.2d at 616.

¶ 10    The dissenting opinion, however, would have concluded that plaintiff's complaint sufficiently alleged that defendant failed to provide plaintiff-students with the constitutionally guaranteed opportunity to receive a sound basic education. *Id.* at 176, 837 S.E.2d at 618 (Zachary, J., dissenting). The dissent opined that unlike in *Doe*, plaintiff's complaint here alleged a colorable constitutional claim based on the school's deliberate indifference to the hostile classroom environment. *Id.* at 177, 837 S.E.2d at 619. Thus, the dissenting opinion would have affirmed the trial court's order. *Id.* at 178, 837 S.E.2d at 619.

¶ 11     Plaintiff appealed to this Court based on the dissenting opinion at the Court of Appeals.[3] Plaintiff argues that defendant's failure to intervene here denied plaintiff-students their constitutional right to the opportunity to receive a sound basic education. Thus, plaintiff contends that the complaint presented sufficient allegations of a colorable constitutional claim to survive defendant's motion to dismiss. We agree. The right to the "privilege of education" and the State's duty to "guard and maintain" that right extend to circumstances where a school board's deliberate indifference to ongoing harassment prevents children from receiving an education. N.C. Const. art. I, § 15.

¶ 12     This Court reviews de novo a trial court's order on a motion to dismiss. *Bridges v. Parrish*, 366 N.C. 539, 541, 742 S.E.2d 794, 796 (2013). When reviewing a motion to dismiss, an appellate court considers "whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory." *Coley v. State*, 360 N.C. 493, 494–95, 631 S.E.2d 121, 123 (2006) (quoting *Thompson v. Waters*, 351 N.C. 462, 463, 526 S.E.2d 650, 650 (2000)).

¶ 13     Article I, Section 15 provides that "[t]he people have a right to the privilege of education, and it is the duty of the State to guard and maintain that right." N.C.

---

[3] Additionally, plaintiff petitioned this Court to review whether the Court of Appeals properly determined that defendant had an immediate right to appeal the trial court's interlocutory order based on the alleged substantial right of governmental immunity. This Court allowed plaintiff's petition. We now conclude that discretionary review was improvidently allowed.

Const. art. I, § 15. This provision, added to the North Carolina Constitution in 1868, "was intended to mark a new and more positive role for state government. Not a restriction on what the state may do, it requires a commitment to social betterment" through educational opportunities. John V. Orth & Paul Martin Newby, *The North Carolina State Constitution* 62 (2d ed. 2013).

¶ 14        Additionally, Article IX, Section 2 implements the right to education as provided in Article I. Specifically, Article IX, Section 2 states that "[t]he General Assembly shall provide by taxation and otherwise for a general and uniform system of free public schools . . . wherein equal opportunities shall be provided for all students." Notably, these two provisions work in tandem: "Article I, Section 15 and Article IX, Section 2 of the North Carolina Constitution combine to guarantee every child of this state an opportunity to receive a sound basic education in our public schools." *Leandro*, 346 N.C. at 347, 488 S.E.2d at 255. "An education that does not serve the purpose of preparing students to participate and compete in the society in which they live and work is devoid of substance and is constitutionally inadequate." *Id.* at 345, 488 S.E.2d at 254; *see also Sneed v. Greensboro City Bd. of Educ.*, 299 N.C. 609, 618, 264 S.E.2d 106, 113 (1980) ("[E]qual access to participation in our public school system is a fundamental right, guaranteed by our state constitution and protected by considerations of procedural due process.").

¶ 15        Further, Article I, Section 15 places an affirmative duty on the government "to guard and maintain that right." N.C. Const. art. I, § 15. Taken together, Article I, Section 15 and Article IX, Section 2 require the government to provide an opportunity to learn that is free from continual intimidation and harassment which prevent a student from learning. In other words, the government must provide a safe environment where learning can take place.

¶ 16        The issue here requires us to determine whether plaintiff's complaint sufficiently alleges a claim for relief under Article I, Section 15 and Article IX, Section 2. First, to allege a cause of action under the North Carolina Constitution, a state actor must have violated an individual's constitutional rights. *See Corum*, 330 N.C. at 782–83, 413 S.E.2d at 289–90 ("The civil rights guaranteed by the Declaration of Rights in Article I of our Constitution are individual and personal rights entitled to protection against state action . . . . The fundamental purpose for its adoption was to provide citizens with protection from the State's encroachment upon these rights. Encroachment by the State is, of course, accomplished by the acts of individuals who are clothed with the authority of the State."); *id.* at 783–84, 413 S.E.2d at 290 ("This Court has recognized a direct action under the State Constitution against state officials for violation of rights guaranteed by the Declaration of Rights. . . . The authorities in North Carolina are consistent with the decisions of the United States Supreme Court . . . to the effect that officials and employees of the State acting in

their official capacity are subject to direct causes of action by plaintiffs whose constitutional rights have been violated.").

Second, the claim must be colorable. *See Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 335, 678 S.E.2d 351, 352 (2009) (referencing plaintiff's "colorable claims" that may be brought directly under the North Carolina Constitution); *Claim, Black's Law Dictionary* (11th ed. 2019) (defining "colorable claim" as "[a] plausible claim that may reasonably be asserted, given the facts presented and the current law (or a reasonable and logical extension or modification of the current law)"); *see also Colorable, Black's Law Dictionary* (11th ed. 2019) (defining colorable as "appearing to be true, valid, or right"). In other words, the claim must present facts sufficient to support an alleged violation of a right protected by the State Constitution.

Third, there must be no "adequate state remedy." *Corum*, 330 N.C. at 782, 413 S.E.2d at 289; *see also id.* at 783, 413 S.E.2d at 290 ("Having no other remedy, our common law guarantees plaintiff a direct action under the State Constitution for alleged violations of his constitutional freedom of speech rights."). No adequate state remedy exists when "state law [does] not provide for the type of remedy sought by the plaintiff." *Craig*, 363 N.C. at 340, 678 S.E.2d at 356. Moreover, a claim that is barred by sovereign or governmental immunity is not an adequate remedy. "[T]o be considered adequate in redressing a constitutional wrong, a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim." *Id.* at 340–

41, 678 S.E.2d at 355. Notably, "when there is a clash between these constitutional rights and sovereign immunity, the constitutional rights must prevail." *Corum*, 330 N.C. at 786, 413 S.E.2d at 292; *see id.* at 785–86, 413 S.E.2d at 291 ("[S]overeign immunity cannot stand as a barrier to North Carolina citizens who seek to remedy violations of their rights guaranteed by the Declaration of Rights.").

¶ 19         Here plaintiff alleged that defendant, the Pitt County Board of Education, failed to protect plaintiff-students' constitutionally guaranteed right to education under Article I, Section 15 and Article IX, Section 2. The Pitt County Board of Education, as a government entity, is a government actor.

¶ 20         Next we must determine whether plaintiff has alleged a colorable constitutional claim. We have previously determined that the North Carolina Constitution provides the right to a sound basic education. *See Leandro*, 346 N.C. at 345, 488 S.E.2d at 254. Here plaintiff has alleged that plaintiff-students have been denied that right because the school's deliberate indifference to ongoing student harassment created an environment in which plaintiff-students could not learn. Notably, the right to a sound basic education rings hollow if the structural right exists but in a setting that is so intimidating and threatening to students that they lack a meaningful opportunity to learn. Despite the fact that plaintiff-students here were provided with a public school to attend, plaintiff alleges that defendant was deliberately indifferent to conduct that prevented plaintiff-students from accessing

their constitutionally guaranteed right to a sound basic education. Deliberate indifference indicates that the government entity knew about the circumstances infringing plaintiff-students' constitutional right and failed to take adequate action to address those circumstances. The alleged facts here support plaintiff's contention that the government did not "guard and maintain that right." N.C. Const. art. I, § 15. As such, plaintiff has alleged a colorable constitutional claim. *See Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 644–47, 119 S. Ct. 1661, 1672–73 (1999) (concluding that the plaintiff, a student, sufficiently stated a claim under Title IX where the defendant, a school board with control over the conduct at issue, was deliberately indifferent to known acts of ongoing sexual harassment).

¶ 21        Finally, looking at whether an adequate state remedy exists, here plaintiff seeks monetary damages as well as injunctive relief through, *inter alia*, a permanent injunction preventing defendant from assigning or requiring plaintiff-students to attend Lakeforest Elementary. The remedy sought here cannot be redressed through other means, as an adequate "state law remedy [does] not apply to the facts alleged" by plaintiff. *Craig*, 363 N.C. at 342, 678 S.E.2d at 356. Thus, plaintiff has alleged a colorable constitutional claim for which no other adequate state law remedy exists.[4] Therefore, sovereign or governmental immunity cannot bar plaintiff's claim.

---

[4] We note that defendant successfully moved to dismiss plaintiff's claims under the SVPA. Defendant pled sovereign or governmental immunity as a defense to any of plaintiff's claims to which it would apply. The SVPA claim is not before us on appeal, and therefore we

¶ 22       Nonetheless, defendant argues that the Court of Appeals correctly relied on its precedent in *Doe* to reach its decision here. *Doe*, as an opinion from the Court of Appeals, is not binding on this Court. Moreover, *Doe* is clearly distinguishable from this case. In *Doe* a teacher made sexual advances on and off school grounds toward and engaged in sexual activity with the plaintiff, a high school student. *Doe*, 222 N.C. App. at 361, 731 S.E.2d at 247. The plaintiff sued the school board for negligent infliction of emotional distress and negligent hiring, supervision, and retention. The plaintiff also brought a claim against the defendant for violating her constitutional right to an education under, *inter alia*, Article I, Section 15. *Id.* at 361, 731 S.E.2d at 247. In her complaint, the plaintiff merely contended that the defendant's negligence in hiring and overseeing the teacher violated the plaintiff's rights.

¶ 23       At the trial court, the defendant in *Doe* unsuccessfully moved to dismiss the constitutional claims. *Id.* at 362, 731 S.E.2d at 247–48. The Court of Appeals reversed, however, concluding that the plaintiff's complaint did not state a colorable claim under the North Carolina Constitution. *Id.* at 371, 731 S.E.2d at 253. The Court of Appeals determined that the constitutionally guaranteed right to a sound basic

---

express no opinion on the merits of that claim. We note, however, that having sought and obtained dismissal of the SVPA claim as barred by governmental immunity, defendant cannot assert that it is an adequate state remedy that would redress the harm alleged here. *See Craig*, 363 N.C. at 340–41, 678 S.E.2d at 355 ("[T]o be considered adequate in redressing a constitutional wrong, a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim.").

education does not extend "beyond matters that directly relate to the nature, extent, and quality of the educational opportunities made available to students in the public school system." *Id.* at 370, 731 S.E.2d at 252–53. Here, however, plaintiff's complaint states a colorable claim under the North Carolina Constitution. Plaintiff has alleged that defendant prevented plaintiff-students from accessing their constitutional right to a sound basic education as a result of defendant's deliberate indifference to ongoing harassment in the classroom. Thus, plaintiff's allegations directly impact the "nature, extent, and quality of the educational opportunities made available" to plaintiff-students as well as indicate that the government failed to "guard and maintain that right."

¶ 24        The decision of the Court of Appeals, which reversed the trial court order denying defendant's motion to dismiss, is reversed. As for plaintiff's petition for discretionary review of additional issues, we conclude that discretionary review was improvidently allowed.

REVERSED IN PART; DISCRETIONARY REVIEW IMPROVIDENTLY ALLOWED IN PART.