IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-81

No. 303A20

Filed 13 August 2021

ESTATE OF MELVIN JOSEPH LONG, by and through MARLA HUDSON LONG, Administratrix

v.

JAMES D. FOWLER, Individually, DAVID A. MATTHEWS, Individually, DENNIS F. KINSLER, Individually, ROBERT J. BURNS, Individually, MICHAEL T. VANCOUR, Individually, and MICHAEL S. SCARBOROUGH, Individually

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 270 N.C. App. 241 (2020), reversing an order entered on 3 May 2019 by Judge Josephine K. Davis in Superior Court, Person County, and remanding to the trial court. Heard in the Supreme Court on 18 May 2021.

*Hardison & Cochran, PLLC, by John Paul Godwin; and Sanford Thompson, PLLC, by Sanford Thompson IV, for plaintiff-appellee.*

*Parker Poe Adams & Bernstein LLP, by Jonathan E. Hall and Patrick M. Meacham; and Joshua H. Stein, Attorney General, by Melissa K. Walker, Assistant Attorney General, Shannon Cassell, Civil Bureau Chief, and Sarah G. Boyce, Deputy Solicitor General, for defendant-appellants.*

EARLS, Justice.

¶ 1        This case raises the question of whether the estate of an individual killed by the allegedly negligent acts of State employees can proceed in state court to assert wrongful death claims against those employees in their individual capacities or whether such a suit is barred by the doctrine of sovereign immunity. Following our

precedent, sovereign immunity does not apply to suits against state employees in their individual capacities. We therefore hold that the trial court erred in dismissing the complaint on those grounds.

¶ 2         The tragic event giving rise to plaintiff's claims occurred on the morning of 20 January 2017, when Melvin Joseph Long was working to reconnect a trailer-mounted chiller on the campus of North Carolina State University (NCSU). To do so, he needed to remove metal flanges that capped two water pipes on the chiller. However, unbeknownst to Mr. Long, the pipes had become filled with pressurized gas after water in the pipes froze and the pipes cracked. As he began to loosen one of the metal flanges, it shot off the water pipe and hit him in the face with great force. Mr. Long died from his injuries five days later, on 25 January 2017.

¶ 3         Following his death, Mr. Long's estate brought the present action against James D. Fowler, David A. Matthews, Dennis F. Kinsler, Robert J. Burns, Michael T. Vancour, and Michael S. Scarborough (defendants), NCSU employees who had worked on the chiller during the months before Mr. Long's injury and, according to plaintiff's allegations, caused his injury. In addition to arguing that the complaint failed to allege substantive elements of Mr. Long's claims, defendants have asked us to hold that Mr. Long's claims are brought against defendants in their official capacities or, in the alternative, that claims such as those brought by Mr. Long are necessarily claims against the State that cannot be brought against defendants in their individual capacities. Doing so would require us to overturn several decades of

this Court's precedent establishing that claims brought against State employees in their individual capacities are not subject to the doctrine of sovereign immunity. However, we are constrained to promote the "stability in the law and uniformity in its application" which may only be achieved through "respect for the opinions of our predecessors." *Wiles v. Welparnel Constr. Co.*, 295 N.C. 81, 85 (1978).

¶ 4     The tie between injury and remedy is so fundamental to our law that it is enshrined in the first article of our state constitution—"every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law." N.C. Const. art. I, § 18. Hewing close to our precedent in this case maintains the general principle that the law provides remedies to injured persons. *Cf. Wirth v. Bracey*, 258 N.C. 505, 508 (1963) ("The obvious intention of the General Assembly in enacting the Tort Claims Act was to enlarge the rights and remedies of a person injured by the actionable negligence of an employee of a State agency while acting in the course of his employment."). By preserving remedies in tort, we "deter certain kinds of conduct by imposing liability when that conduct causes harm." *Haarhuis v. Cheek*, 255 N.C. App. 471, 480 (2017) (quoting Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, *The Law of Torts* § 14 (2d ed. 2011)). As we have previously stated, "[t]here can be little doubt that immunity fosters neglect and breeds irresponsibility, while liability promotes care and caution." *Rabon v. Rowan Mem'l Hosp., Inc.*, 269 N.C. 1, 13 (1967). Defendants in this case were sued in their individual capacities, and the complaint adequately stated claims for the tort relief sought by Mr. Long's

estate. As a result, the trial court erroneously granted defendant's motion to dismiss, and we affirm the decision of the Court of Appeals reversing that order.

## I.  Background

Since this case comes to us on the trial court's order granting a motion to dismiss pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the North Carolina Rules of Civil Procedure, we accept the allegations in the complaint as true. *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 611 (2018) (Rule 12(b)(1)); *Parker v. Town of Erwin*, 243 N.C. App. 84, 96 (2015) (Rule 12(b)(2)); *Bridges v. Parrish*, 366 N.C. 539, 541 (2013) (Rule 12(b)(6)).

The Complaint alleges that in December 2016, NCSU owned, operated, and used a large, trailer-mounted chiller. Around 21 December 2016, one or more of defendants, pursuant to a work order completed during the course of their employment, shut the chiller down, disconnecting its power and water sources. At that time, they drained water from the chiller. However, two signs on the chiller contained a warning indicating that it was "not possible to drain all water" from the chiller and that the chiller "must be drained and refilled with" antifreeze solution "[f]or freeze protection during shut-down." Similarly, the chiller's operating manual instructed that the chiller should be filled with antifreeze to "prevent freeze-up damage to the cooler tubes." Defendants did not put antifreeze into the chiller.

Almost two weeks later, on 3 January 2017, one or more defendants tightly secured heavy metal flanges, weighing approximately 13.1 pounds, to the ends of the

chiller's water pipes to cap the pipes. A few days after that, the area experienced a hard freeze, with temperatures falling as low as nine degrees Fahrenheit. Water remaining in the pipes froze and ruptured the pipes, which caused the pipes to fill with a pressurized refrigerant gas. The gas built up in the pipes behind the metal flanges, and the pipes became pressurized.

¶ 8      On 20 January 2017, Mr. Long attempted to loosen the flanges on the chiller pipes so that the chiller could be reconnected. As he began doing so, one of the flanges flew off the end of the pipe, propelled by the pressurized refrigerant gas, and struck him in the face. The flange knocked off part of Mr. Long's skull, and he died five days later.

¶ 9      Marla Hudson Long, Mr. Long's wife and the personal representative of Mr. Long's estate, filed the instant action in Superior Court, Person County, on 13 November 2018. On 19 February 2019, defendants filed a motion to dismiss pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the North Carolina Rules of Civil Procedure, arguing that the trial court lacked jurisdiction over the subject matter and over the person of defendants and that the complaint failed to state a claim upon which relief could be granted. On 21 February 2019, defendants filed their answer and defenses. Following a hearing on 8 April 2019, the trial court granted defendants' motion to dismiss in an order filed 3 May 2019.

¶ 10      Following the trial court's order granting defendants' motion to dismiss, the estate appealed to the Court of Appeals. The Court of Appeals reversed the trial

court's order in a divided decision, holding that defendants, employees of NCSU, had been sued in their individual capacities and were therefore not entitled to the defense of sovereign immunity and that the complaint had adequately stated claims for negligence and gross negligence. *Estate of Long v. Fowler*, 270 N.C. App. 241, 250, 252–53 (2020). The dissent, on the other hand, would have held that the complaint failed to adequately plead negligence or gross negligence and that defendants were entitled to sovereign immunity because the allegedly negligent actions occurred within the scope of their employment as public employees. *Id.* at 254–55, 257 (Tyson, J., dissenting).

¶ 11    Before this Court, defendants assert that they are being sued in their official capacities and that the suit is actually one against NCSU, which is entitled to sovereign immunity. They also argue that the complaint fails to state claims for negligence and gross negligence because it does not allege facts establishing proximate cause, and that the complaint fails to adequately allege claims for punitive damages. We reject these arguments and affirm the Court of Appeals. A suit against State employees is not subject to the doctrine of sovereign immunity when brought against the employees in their individual capacities. The complaint in this case indicates that it is brought against defendants in their individual capacities. Moreover, the complaint adequately alleges that Mr. Long's injury was proximately caused by defendants' conduct and adequately alleges that defendants acted with the requisite willful or wanton conduct to support a claim for punitive damages.

## II.    Analysis

### A. Sovereign immunity

When reviewing a trial court's order granting a motion to dismiss pursuant to Rule 12(b)(1), "we apply de novo review, accepting the allegations in the complaint as true and viewing them in the light most favorable to the non-moving party." *Corwin*, 371 N.C. at 611.[1] We review de novo "[q]uestions of law regarding the applicability of sovereign or governmental immunity." *Wray v. City of Greensboro*, 370 N.C. 41, 47 (2017) (alteration in original) (quoting *Irving v. Charlotte-Mecklenburg Bd. of Educ.*, 368 N.C. 609, 611 (2016)).

Defendants are not entitled to the defense of sovereign immunity merely because they are State employees, even when the tortious conduct is alleged to have occurred during the scope of their employment. *Miller v. Jones*, 224 N.C. 783, 787 (1945) ("The mere fact that a person charged with negligence is an employee of others to whom immunity from liability is extended on grounds of public policy does not thereby excuse him from liability for negligence in the manner in which his duties are performed, or for performing a lawful act in an unlawful manner."); *see also Isenhour v. Hutto*, 350 N.C. 601, 609 (1999) (stating that it is irrelevant whether

---

[1] As was the case in *Teachy v. Coble Dairies, Inc.*, we need not decide whether a motion to dismiss on the basis of sovereign immunity is properly designated as a Rule 12(b)(1) motion or a Rule 12(b)(2) motion. *See Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 328 (1982) (stating that "the distinction becomes crucial in North Carolina because" a denial of a Rule 12(b)(2) motion is immediately appealable by statute while a denial of a Rule 12(b)(1) motion is not). Here, the motion to dismiss was granted, and neither Ms. Long's appeal to the Court of Appeals nor defendants' appeal to this Court was an interlocutory appeal.

allegations of tortious conduct relate to a public employee defendant's official duties "[b]ecause public employees are individually liable for negligence in the performance of their duties"); *Meyer v. Walls*, 347 N.C. 97, 108 (1997) ("Therefore, the fact that defendants may have been acting as agents of the State does not preclude a claim against defendants.").[2] However, as defendants correctly note, a suit against a State employee in that employee's official capacity is a suit against the State and therefore subject to the doctrine of sovereign immunity. *See Isenhour*, 350 N.C. at 608 ("A suit against a defendant in his individual capacity means that the plaintiff seeks recovery from the defendant directly; a suit against a defendant in his official capacity means that the plaintiff seeks recovery from the entity of which the public servant defendant is an agent." (quoting *Meyer*, 347 N.C. at 110)). As a result, as defendants acknowledge, the threshold question in this case is whether defendants are being sued in their individual or in their official capacities. [3]

---

[2] It is inconsistent with a fair reading of any of our precedents establishing that sovereign immunity is unavailable to a State employee sued in his or her individual capacity to suggest that the law is "less than clear," on this point. *See, e.g.*, *Mullis, v. Sechrest*, 347 N.C. 548, 551 (1998) ("[T]he threshold issue to be determined" when evaluating what immunity defense are available "is whether [the] defendant [ ] is being sued in his official capacity, individual capacity, or both"); *see also* Trey Allen, *Local Government Immunity to Lawsuits in North Carolina*, (Inst. of Gov't, Univ. of N.C. at Chapel Hill, Oct. 2018, at 5–6) ("Under current case law, governmental immunity is not a defense to tort claims alleged against officers or employees in their individual capacities.").

[3] The dissent wrongly posits that "the distinction between official and individual capacity conflicts with the concept of waiver of the State's sovereign immunity." In fact, the distinction between an "official" and "individual capacity" suit has been recognized as determinative when examining assertions of sovereign immunity by both the State of North Carolina under State law, as detailed above, and in claims arising under federal law. As we explained in *Corum*,

## B. Individual or official capacity

It is abundantly clear from the complaint that defendants are being sued in their individual capacities. "It is a simple matter for attorneys to clarify the capacity in which a defendant is being sued. Pleadings should indicate in the caption the capacity in which a plaintiff intends to hold a defendant liable." *Mullis v. Sechrest*, 347 N.C. 548, 554 (1998). Here, the caption of the complaint lists each named defendant followed by "Individually" after each name. Moreover, the first line of the complaint indicates that the plaintiff is "complaining of the defendants in their individual capacities, jointly and severally." The prayer for relief seeks relief against defendants "jointly and/or severally" after "having stated claims against the defendants, individually and jointly." This is further indication that the complaint

---

[S]tate governmental officials can be sued in their individual capacities for damages under [42 U.S.C. §] 1983. . . . [U]nlike a suit against a state official in his official capacity, which is basically a suit against the official office and therefore against the State itself, a suit against an individual who happens to be a governmental official but is not acting in his official capacity is not imputed to the State. Such individuals are sued as individuals, not as governmental employees. Presumably, they are personally liable for payment of any damages awarded.

*Corum v. Univ. of N. Carolina Through Bd. of Governors*, 330 N.C. 761, 772 (1992); *cf. Lewis v. Clarke*, 137 S. Ct. 1285, 1291 (2017) ("The identity of the real party in interest dictates what immunities may be available. Defendants in an official-capacity action may assert sovereign immunity. . . . But sovereign immunity does not erect a barrier against suits to impose individual and personal liability.") (internal quotation marks omitted). Recognizing the distinction between official and individual capacity claims in no way "conflicts with the concept of waiver of the State's sovereign immunity" because there is no sovereign immunity to assert when the defendant is sued in his or her individual capacity.

states claims against defendants in their individual capacities. *See id.* ("Finally, in the prayer for relief, plaintiffs should indicate whether they seek to recover damages from the defendant individually or as an agent of the governmental entity.").

¶ 15        Importantly, the prayer for relief does not seek injunctive relief implicating the exercise of governmental power—it instead seeks only compensatory and punitive damages against the individual defendants. *See id.* at 552 (discussing the distinction between official and individual capacity claims and noting that "seek[ing] an injunction requiring the defendant to take an action involving the exercise of a governmental power" is indicative of an official capacity suit (quoting *Meyer*, 347 N.C. at 110)). When, as in the instant case, the complaint seeks monetary damages, the claim "is an individual-capacity claim" if "the complaint indicates that the damages are sought . . . from the pocket of the individual defendant." *Meyer*, 347 N.C. at 110 (quoting Anita R. Brown-Graham & Jeffrey S. Koeze, *Immunity from Personal Liability under State Law for Public Officials and Employees: An Update*, Loc. Gov't L. Bull. 67 (Inst. of Gov't, Univ. of N.C. at Chapel Hill), Apr. 1995, at 7).

¶ 16        Defendants have argued that they are being sued in their official capacities, and not in their individual capacities, because their allegedly tortious conduct was performed in the scope and course of their employment. However,

> [w]hether the allegations relate to actions outside the scope of defendant's official duties is not relevant in determining whether the defendant is being sued in his or her official or individual capacity. To hold otherwise would contradict North Carolina Supreme Court cases that have held or

stated that public employees may be held individually liable for mere negligence in the performance of their duties.

*Meyer*, 347 N.C. at 111.

¶ 17     Defendants have also argued that "the course of proceedings" indicates that the suit is brought against defendants in their official capacities, not in their individual capacities. However, we need not look to "the course of proceedings" when "the complaint . . . clearly specif[ies] whether the defendants are being sued in their individual or official capacities." *Mullis*, 347 N.C. at 552 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)). As indicated above, the complaint in this case clearly indicates that defendants are being sued in their individual capacities. There is no ambiguity in the complaint which would require us to look to the course of proceedings to determine in what capacity defendants are being sued.

¶ 18     Essentially, defendants assert that this suit is one against the State because Ms. Long has also sued NCSU in the Industrial Commission. However, "the fact that the Tort Claims Act provides for subject matter jurisdiction in the Industrial Commission over a negligence claim against the State does not preclude a claim against defendants in Superior Court." *Meyer*, 347 N.C. at 108. "A plaintiff may maintain both a suit against a state agency in the Industrial Commission under the Tort Claims Act and a suit against the negligent agent or employee in the General Court of Justice for common-law negligence." *Id.* (citing *Wirth*, 258 N.C. at 507–08).

¶ 19     Finally, defendants asserted at oral argument that regardless of whether the

complaint attempts to state claims against defendants in their individual capacities, the General Assembly has "taken off the table" suits against individual employees for conduct within the scope of their employment. Defendants assert that the suit is actually brought against them in their official capacities because the General Assembly has passed a law of general applicability which causes the State to pay judgments in actions brought against State employees. In defendants' view, any other conclusion would "subvert the General Assembly's efforts to route these kinds of tort claims to the Industrial Commission." We can divine no such intent from the statutes that defendants cite.

¶ 20    By statute, the General Assembly has provided that "upon request of an employee or former employee, the State may provide for the defense of any civil or criminal action or proceeding brought against him in his official or individual capacity, or both, on account of an act done or omission made in the scope and course of his employment as a State employee." N.C.G.S. § 143-300.3 (2019). In such a case, the State has set out its intention to "pay (i) a final judgment awarded in a court of competent jurisdiction against a State employee or (ii) the amount due under a settlement of the action under this section." N.C.G.S. § 143-300.6(a) (2019). Defendants argue that these two statutes indicate that an action against a State employee which the State chooses to defend is in actuality an action against the State entitled to sovereign immunity and required to be brought in the Industrial Commission pursuant to the State Tort Claims Act. *See* N.C.G.S. § 143-291(a) (2019)

("The North Carolina Industrial Commission is hereby constituted a court for the purpose of hearing and passing upon tort claims against the State Board of Education, the Board of Transportation, and all other departments, institutions and agencies of the State.").

¶ 21        The interpretation urged by defendants is belied by the text of the statutes themselves. The provision permitting the payment of judgments and settlements against State employees expressly provides that "[t]his section does not waive the sovereign immunity of the State with respect to any claim." N.C.G.S. § 143-300.6(a). If, as defendants claim, actions against State employees which the State has elected to defend are entitled to sovereign immunity protections and may only proceed in the Industrial Commission, there would have been no need for the General Assembly to specify that judgments or settlements paid in that context are not a waiver of the State's sovereign immunity. If defendants were correct, there would be no danger that the payment of a judgment or settlement in such an action could constitute a waiver of the State's sovereign immunity—the payment would have been made in an Industrial Commission action pursuant to the State's limited waiver of immunity in the State Tort Claims Act. The General Assembly would have had no reason to specify that the payment of a judgment or settlement on behalf of a State employee "does not waive the sovereign immunity of the State with respect to any claim." *See* N.C.G.S. § 143-300.6(a). Adopting defendants' argument would necessitate the conclusion that section 143-300.6 contains superfluous language—this conclusion is fatal to their

claim. *See State v. Morgan*, 372 N.C. 609, 614 (2019) ("[A] statute may not be interpreted 'in a manner which would render any of its words superfluous.' " (quoting *State v. Coffey*, 336 N.C. 412, 417 (1994))).

¶ 22        More broadly, the statutory scheme referenced by defendants would not exist if actions against State employees in their individual capacities were subject to the doctrine of sovereign immunity. "[T]he Tort Claims Act applies only to actions against state departments, institutions, and agencies and does not apply to claims against officers, employees, involuntary servants, and agents of the State." *Meyer*, 347 N.C. at 107. As a result, no action could be maintained in the Industrial Commission against the individual defendants being sued in the instant action. However, section 143-300.6 of our General Statutes contemplates the payment by the State of "a final judgment awarded in a court of competent jurisdiction against a State employee." N.C.G.S. § 143-300.6(a). If these actions could only be brought in the Industrial Commission, which has no jurisdiction over the individual defendants, there would have been no need for the General Assembly to provide for the payment of judgments against State employees in any "court of competent jurisdiction"—no such judgments would exist. *Id.* If the General Assembly had intended that tort claims against State employees be decided in the Industrial Commission, it would not have written a statute that specifically allowed for the State to pay "a final judgment awarded in a court of competent jurisdiction against a State employee." *Id.*

¶ 23        Two more considerations guide our decision on this point. First, adopting

defendants' argument would require overruling our prior decisions holding that actions against public employees are not subject to the doctrine of sovereign immunity—decisions issued both before and after the enactment of statutory provisions providing for defense by the State of actions against State employees and the payment by the State of judgments against State employees. *See Wirth*, 258 N.C. at 508 (stating in 1963 that the Tort Claims Act permits a suit against a state agency in the Industrial Commission without abrogating a plaintiff's right to bring an action against the employee of such an agency, who remains "personally liable for his own actionable negligence"); *Meyer*, 347 N.C. at 108 ("Furthermore, the fact that the Tort Claims Act provides for subject matter jurisdiction in the Industrial Commission over a negligence claim against the State does not preclude a claim against defendants in Superior Court.").

Second, we note that the State's decision to defend a State employee for actions in the scope and course of employment is discretionary. *See* N.C.G.S. § 143-300.3. We decline to adopt an interpretation of our statutes which would create serious notice problems for plaintiffs who cannot know whether the State will choose to defend an action against a particular employee, which defendants assert would trigger sovereign immunity and preclude a remedy in superior court. Even assuming that defendants' interpretation was reasonable, we would avoid it. *See In re Arthur*, 291 N.C. 640, 642 (1977) ("Where one of two reasonable constructions will raise a serious constitutional question, the construction which avoids this question should be

adopted."). For all of these reasons, we conclude that the trial court erred by granting defendants' motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(2) on the basis of defendants' arguments pertaining to sovereign immunity.

## C. Failure to state a claim

¶ 25    "Our review of the grant of a motion to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure is de novo." *Bridges*, 366 N.C. at 541. Our task is to determine "whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory." *Id.* (quoting *Coley v. State*, 360 N.C. 493, 494–95 (2006)). Defendants argue that Mr. Long failed to allege that his injury was a reasonably foreseeable result of their conduct and that the complaint therefore did not sufficiently establish the element of proximate cause. Defendants also argue that the complaint did not adequately allege the willful or wanton conduct needed to support a claim for punitive damages. We reject both arguments and hold that the trial court erred in granting defendants' motion to dismiss pursuant to Rule 12(b)(6).

### 1. *Proximate cause*

¶ 26    Defendants argue that the complaint fails to allege that Mr. Long's injury was a reasonably foreseeable consequence of defendants' actions. At oral argument, defendants asserted that there is nothing in the complaint suggesting that they should have known that their conduct could possibly result in the chiller freezing up and pressurizing, thereby causing injury. We conclude that the complaint sufficiently

alleges that defendants' actions proximately caused Mr. Long's injury.

In a common law negligence claim, "[i]t is sufficient if by the exercise of reasonable care the defendant might have foreseen that some injury would result from his conduct or that consequences of a generally injurious nature might have been expected. Usually the question of foreseeability is one for the jury." *Fussell v. N.C. Farm Bureau Mut. Ins. Co.*, 364 N.C. 222, 226 (2010) (alteration in original) (quoting *Slaughter v. Slaughter*, 264 N.C. 732, 735 (1965)).

Defendants argue that the complaint "failed to include requisite allegations of fact that a reasonably foreseeable consequence of defendants' alleged failure to properly drain water from the chiller unit's pipes would be a chemical reaction that could lead to a pressurized explosion of sufficient force to propel a 13-pound metal flange at a person's head." However, there is nothing surprising about the fact that water left in pipes that are subjected to freezing temperatures may freeze and cause the pipes to burst. Defendants' description of this phenomenon as "a chemical reaction" does not make the result any less foreseeable. This unsurprising fact is underscored by two signs on the outside of the chiller that read

> **FREEZE WARNING!**
> It is <u>not</u> possible to drain <u>all</u> water from this heat exchanger! For freeze protection during shut-down, exchanger must be drained and refilled with 5 gals Glycol min. 80GX504736-

**TRAPPED WATER!**

By comparison, the work order attached to the complaint indicates that defendants were instructed to "drain and secure carrier chiller for relocation." Given that the work order instructed defendants to "drain" the chiller, and that the notice on the chiller specified that it could not be completely drained and it "must be drained and refilled" with antifreeze, defendants were on notice that a necessary part of the task they were instructed to complete was ensuring that antifreeze was added to the chiller. As a result, it is irrelevant that the work order did not specifically instruct defendants to "winterize" the chiller—the complaint alleges sufficient facts that, if true, indicate defendants were on notice that they must refill the chiller with antifreeze after draining it. The work order did not need to set out every step required to execute the task properly and safely.

The complaint alleges that each defendant improperly drained water from the chiller, leaving water inside. It alleges that notices on the chiller warned that it was not possible to drain all water from the chiller and that the chiller must be filled with antifreeze to prevent freezing. The complaint alleges that defendants failed to fill the chiller with antifreeze. The complaint alleges that as a result of this failure, the pipes froze and ruptured. The complaint further alleges that each defendant knew or should have known that this could happen and that the pipes would become pressurized as a result. Finally, the complaint alleges that the pressure in the pipes caused one of the 13-pound metal flanges that defendants allegedly placed on the

ends of the pipes to fly off, resulting in injuries that caused Mr. Long's death.

¶ 31        The complaint adequately alleged that defendants either knew or should have known that their conduct would cause damage to the chiller that might leave it in a dangerous state, that defendants in fact caused the damage through their actions, and that injury in fact resulted. This was sufficient, under principles of notice pleading, to "give the substantive elements of a legally recognized claim." *Estate of Savino v. Charlotte-Mecklenburg Hosp. Auth.*, 375 N.C. 288, 297 (2020) (quoting *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 205 (1988)). "[P]roximate cause is ordinarily a question of fact for the jury, to be solved by the exercise of good common sense in the consideration of the evidence of each particular case." *McAllister v. Khie Sem Ha*, 347 N.C. 638, 645 (1998) (alteration in original) (quoting *Williams v. Carolina Power & Light Co.*, 296 N.C. 400, 403 (1979)). At this stage of the trial, dismissal is not warranted and plaintiff is entitled to proceed in the litigation which will determine whether the evidence bears out the allegations of proximate cause contained in the complaint.

### 2. *Punitive damages*

¶ 32        As an initial matter, we need to be clear about the statutory standards for recovery of punitive damages applicable here. *See* N.C.G.S. § 1D-15 (2019). There is some suggestion in the briefs that for purposes of punitive damages, gross negligence is equivalent to willful or wanton conduct. However, our law now provides that "[p]unitive damages may be awarded only if the claimant proves" that either fraud,

malice, or "[w]illful or wanton conduct" occurred and related to the injury. N.C.G.S. § 1D-15(a). As used here, " '[w]illful or wanton conduct' means more than gross negligence" and is defined as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." N.C.G.S. § 1D-5 (2019). The complaint alleges that each defendant is liable in negligence and gross negligence for compensatory damages and separately that punitive damages should be awarded. As to the punitive damages claims, we consider whether the complaint "gives sufficient notice of events or transactions to allow the adverse party to understand the nature and basis for the claim[s] [of punitive damages for willful or wanton conduct], to allow him to prepare for trial, and to allow for the application of *res judicata*." *Henry v. Deen*, 310 N.C. 75, 85 (1984). We conclude that it does. Because willful or wanton conduct is a higher standard than gross negligence, this inquiry obviates any need to separately determine whether the complaint adequately states a claim for gross negligence. *See Estate of Savino*, 375 N.C. at 300 ("[W]illful and wanton and reckless conduct is still a higher degree of negligence or a greater degree of negligence than the negligence of gross negligence . . . ." (quoting *Crow v. Ballard*, 263 N.C. 475, 477 (1965)).

¶ 33     In their brief, defendants argue that the allegations in the complaint do not rise to the level of "willful or wanton conduct" necessary to sustain a claim for punitive damages in the absence of fraud or malice. *See* N.C.G.S. § 1D-15(a). They argue that

the complaint contains no allegations creating a factual basis for the "inference that NCSU's employees knew or should have known about the risk of pressurized gas build-up in the chiller's water pipes." In defendants' view, the allegations of the complaint fail to state a claim for punitive damages because they do not establish that defendants were on notice that their actions might cause injury.

¶ 34    Defendants went further at oral argument, contending that because the allegations in the complaint "at most" support the inference that defendants should have known that their conduct could cause injury, the complaint is insufficient to state a claim for punitive damages. Defendants argued that the "willful or wanton conduct" necessary to establish gross negligence requires actual knowledge of the possibility of injury.

¶ 35    As noted above, a claim for punitive damages may be based on allegations of fraud, malice, or "[w]illful or wanton conduct." N.C.G.S. § 1D-15(a). Here, where there are no allegations of fraud or malice, the punitive damages claims are based on the aggravating factor of willful or wanton conduct. Notice pleading principles are applicable to claims for punitive damages. *Shugar v. Guill*, 304 N.C. 332, 337–38 (1981). Under those principles, there must be "sufficient information in the complaint from which defendant [can] take notice and be apprised of 'the events and transactions which produce the claim to enable [him] to understand the nature of it and the basis for it.' " *Id.* at 338 (second alteration in original) (quoting *Sutton v. Duke*, 277 N.C. 94, 104 (1970)). The complaint need not lay out the "detailed and

specific facts giving rise to punitive damages." *Henry*, 310 N.C. at 85 (citing *Sutton*, 277 N.C. at 102).

¶ 36        As to each of the six defendants, the complaint alleges that the defendant's "acts and/or omissions . . . demonstrated a conscious or intentional disregard or indifference to the rights and safety of others, including Joe Long, which [that defendant] knew, or should have known, would be reasonably likely to result in injury or death and as such constituted willful or wanton conduct." The "acts and/or omissions" of each defendant are described as follows:

a. He improperly drained water from the Carrier chiller;

b. He did not fill the Carrier chiller with glycol, ethylene glycol or some other anti-freeze after draining water from it;

c. He left the Carrier chiller outside when he knew or should have known there was still water in the cooler tubes;

d. He left the Carrier chiller outside when there was water in the cooler tubes when the temperature dropped below freezing;

e. He capped the inlet water pipe and the outlet water pipe of the Carrier chiller with metal flanges when he knew or should have known the cooler tubes could be damaged and the water tubes and pipes could become pressurized;

f. He allowed the inlet water pipe and the outlet water pipe of the Carrier chiller to remain capped when he knew, or should have known, pressure could build up inside the chiller;

g.  He did not consult the labels on the Carrier chiller . . . when he shut-down, disconnected, drained, or capped the Carrier chiller;

h.  He did not follow the labels . . . when he shut-down, disconnected, drained, or capped the Carrier chiller;

i.  He did not consult the Winter Shutdown instructions of the Operating Manual of the Carrier chiller . . . when he shut-down, disconnected, drained, or capped the Carrier chiller;

j.  He did not follow the Winter Shutdown instructions of the Operating Manual . . . when he shut-down, disconnected, drained, or capped the Carrier chiller;

k.  He ordered shut-down, disconnection, draining, and capping of the Carrier chiller in the wintertime without following the instructions on the labels, the Operating Instruction Manual, or otherwise exercising reasonable care;

l.  He directed shut-down, disconnection, draining, and capping of the Carrier chiller in the wintertime without following the instructions on the labels, the Operating Instruction Manual, or otherwise exercising reasonable care;

m.  He supervised one or more of the other defendants in the shut-down, disconnection, draining, or capping of the Carrier chiller in the wintertime without following the instructions on the labels, the Operating Instruction Manual, or otherwise exercising reasonable care;

n.  He did not warn Joe Long that the Carrier chiller had been shut down in the winter contrary to reasonable safe procedures and that there was high pressure gas behind the metal flanges;

o.  He did not warn anyone with Joe Long's employer, Quate Industrial Service, Inc., that the Carrier

chiller had been shut down in the winter contrary to reasonable safe procedures and that there was high pressure gas behind the metal flanges;

p.  He failed to exercise reasonable care during winter shut-down of the Carrier chiller in such a way that the chill water tubes were damaged by freezing and allowed to become pressurized and then capped the inlet water pipe and the outlet water pipe so that the Carrier chiller became ultra-hazardous;

q.  He did not exercise reasonable care to prevent the metal flange from becoming exposed to pressure from the inside of the chiller;

r.  He was otherwise negligent as will be shown through discovery and proven at the trial of this action.

¶ 37    As to each defendant, the complaint alleges that the defendant, either knowingly or with reckless disregard of the consequences of his actions, left the chiller in such a condition that it was likely to seriously injure the next person who came along to work on it. The complaint specifically alleges that each defendant knew or should have known that the chiller's tubes would become damaged in cold weather (knowledge underscored by notices attached to the chiller), and thereby become pressurized. The complaint further alleges that each defendant capped the pipes when each defendant knew or should have known that the pipes would become pressurized. Moreover, the complaint alleges that each defendant's actions "demonstrated a conscious or intentional disregard or indifference to the rights and safety of others, including Joe Long, which [that defendant] knew, or should have

known, would be reasonably likely to result in injury or death and as such constituted willful or wanton conduct." These allegations were sufficient to put defendants on notice of the events that the complaint asserts give rise to the claims for punitive damages and are sufficient to allow defendants "to understand the nature and basis for the claim." *See Henry*, 310 N.C. at 85 (citing *Sutton*, 277 N.C. at 102). As a result, the complaint states claims for punitive damages sufficient to survive a motion to dismiss pursuant to Rule 12(b)(6).

### III.     Conclusion

The complaint in this case makes clear that it is a suit brought against State employees in their individual capacities. Under our prior decisions, it is not subject to the doctrine of sovereign immunity. The State's voluntary election to defend State employees for conduct performed in the course of their employment does not change this analysis, nor does the State's payment of judgments entered against such employees. The complaint adequately alleges facts from which, if true, a jury could find that Mr. Long's injury was proximately caused by defendants' conduct and further alleges facts sufficient to state claims for punitive damages against defendants. As a result, we affirm the decision of the Court of Appeals.

AFFIRMED.

Justice BERGER dissenting.

The State can only act through its officers and employees. The question presented is whether defendants were acting in their official capacity or individually. The statute waiving sovereign immunity grants the Industrial Commission exclusive jurisdiction to make this determination. The majority's holding removes this responsibility from the Industrial Commission and places it in the hands of a plaintiff, which could lead to double recovery by allowing plaintiff to pursue the same claim, for the same conduct, and the same injury, in both the Industrial Commission and superior court. Because the complaint in this case, when fully considered, indicates that plaintiff is suing defendants in their official capacities – the only capacity in which they performed their task – the Industrial Commission has exclusive jurisdiction over this case. Furthermore, the majority's holding constitutes a drastic departure from our requirements to plead facts sufficient to establish both proximate cause and willful or wanton conduct. Therefore, I respectfully dissent.

"Sovereign immunity is a legal principle which states in its broadest terms that the sovereign will not be subject to any form of judicial action without its express consent." *Guthrie v. N.C. State Ports Auth.*, 307 N.C. 522, 535, 299 S.E.2d 618, 625 (1983) (quoting 12 Wake Forest L. Rev. 1082, 1083 (1976)). "It has long been established that an action cannot be maintained against the State of North Carolina *or an agency thereof* unless it consents to be sued or upon its waiver of immunity, and that *this immunity is absolute and unqualified*." *Guthrie*, 307 N.C. at 534, 299 S.E.2d

at 625 (citations omitted) (emphasis in original) ("The State has absolute immunity in tort actions . . . except insofar as it has consented to be sued or otherwise expressly waived its immunity."). Since the State can only act through individuals, its officers and employees enjoy the protection of the State's sovereign immunity as they perform their official duties.

¶ 41 In N.C.G.S. § 143-291, the General Assembly enacted the State Tort Claims Act (STCA) which partially waived the State's sovereign immunity in tort actions "to enlarge the rights and remedies of a person injured by the actionable negligence of an employee of a State agency while acting in the course of his employment." *Meyer v. Walls*, 347 N.C. 97, 109, 489 S.E.2d 880, 887 (1997) (quoting *Wirth v. Bracey*, 258 N.C. 505, 507–08, 128 S.E.2d 810, 813 (1963)). Subsection 143-291(a) states in relevant part:

> The North Carolina Industrial Commission is hereby *constituted a court for the purpose of hearing and passing upon tort claims* against the State Board of Education, the Board of Transportation, and all other departments, institutions and agencies of the State. *The Industrial Commission shall determine whether* or not each individual claim arose as a result of the *negligence of any officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority*, under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina.

N.C.G.S. § 143-291(a) (2019) (emphases added).

¶ 42 A plain reading of N.C.G.S. § 143-291(a) makes it clear that the Industrial

Commission maintains exclusive jurisdiction over tort claims against "the State Board of Education, the Board of Transportation, and all other departments, institutions and agencies of the State." *Id.*; *see Meyer*, 347 N.C. at 105, 489 S.E.2d at 884 ("The only claim authorized by the Tort Claims Act is a claim against the State agency. True, recovery, if any, must be based upon the actionable negligence of an employee of such agency while acting within the scope of his employment." (quoting *Wirth*, 258 N.C. at 507–08, 128 S.E.2d at 813)).

Here, plaintiff sued defendants as employees of North Carolina State University (NCSU). According to the majority, a plaintiff may sue a defendant in their individual capacity in superior court for ordinary negligence that arose during the course and scope of their employment. However, the distinction between official capacity and individual capacity conflicts with both the concept of waiver of sovereign immunity and the plain language of N.C.G.S. § 143-291(a).[1]

First, N.C.G.S. § 143-291(a) states that the Industrial Commission "shall determine whether or not each individual claim arose as a result of the negligence of any officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority[.]" N.C.G.S. § 143-

---

[1] We readily acknowledge that our precedent in this area is less than clear and that there has been little discussion on the purpose of the STCA, the plain language of N.C.G.S. § 143-291(a), or the exclusive jurisdiction of the Industrial Commission to make course and scope determinations. The approach taken by the majority, however, is inconsistent with the jurisdiction vested in the Industrial Commission, the limited waiver of the State's sovereign immunity, and the plain language of N.C.G.S. § 143-291(a).

291(a). The plain language of N.C.G.S. § 143-291(a) makes it clear that the Industrial Commission is vested with the power to determine whether the negligence of employees of the State occurred during the course and scope of their employment. However, under the majority's reasoning, a plaintiff is allowed to make this determination simply by including the words "in their individual capacity" in the complaint. In effect, this allows a plaintiff to take away the Industrial Commission's jurisdiction, while at the same time creating jurisdiction in superior court.[2]

¶ 45      Second, because the State can only act through officers and employees, the distinction between official capacity and individual capacity conflicts with the concept of waiver of the State's sovereign immunity. The STCA narrowly waived the State's sovereign immunity for ordinary negligence of a State employee that occurred *within the course and scope of their employment.* In this limited waiver of sovereign immunity, the STCA gave the Industrial Commission exclusive jurisdiction over

---

[2] Allowing plaintiffs to create jurisdiction in superior court by simply using the words "in their individual capacity" in the complaint implicates N.C.G.S. § 143-300.3. N.C.G.S. § 143-300.3 states in relevant part, "upon request of an employee or former employee, the State may provide for the defense of any civil or criminal action or proceeding brought against him in his official or individual capacity, or both, on account of an act done or omission made in the scope and course of his employment as a State employee." N.C.G.S. § 143-300.3 (2019). While the majority is correct that the State's decision to pay is discretionary, this discretionary determination has far reaching consequences. If the State chooses not to provide for the defense of a State employee acting within the course and scope of their employment, State employees could potentially lose their homes and other assets simply because a plaintiff included the words "in their individual capacity" in the complaint. On the other hand, if the State chooses to defend an employee, a plaintiff who uses the words "in their individual capacity" has, in essence, circumvented the Industrial Commission's jurisdiction, and is now bringing a suit against the State in superior court, creating the potential of a double recovery for the same injury.

these types of cases. *See* N.C.G.S. § 143-291(a) ("The North Carolina Industrial Commission is hereby constituted a court for the purpose of hearing and passing upon tort claims against the State Board of Education, the Board of Transportation, and all other departments, institutions and agencies of the State."). To allow a plaintiff to bring suit in superior court against an employee of the State for ordinary negligence that arose during the course and scope of their employment contravenes the purpose of the STCA.

This situation is similar to cases arising in the workers' compensation context. This Court has stated that

> [t]he North Carolina Industrial Commission has a special or limited jurisdiction created by statute, and confined to its terms. Viewed as a court, it is one of limited jurisdiction, and it is a universal rule of law that parties cannot, by consent, give a court, as such, jurisdiction over subject matter of which it would otherwise not have jurisdiction. Jurisdiction in this sense cannot be obtained by consent of the parties, waiver, or estoppel.

*Hart v. Thomasville Motors, Inc.*, 244 N.C. 84, 88, 92 S.E.2d 673, 676 (1956) (citations omitted). "The Workmen's Compensation Act, in [N.C.]G.S. [§] 97-9, provides that the sole remedy for a covered employee against his employer or those conducting the employer's business is to seek compensation under the Act. Thus, an employee subject to the Act whose *injuries arise out of and in the course of his employment* may not maintain" an action for negligence. *Strickland v. King*, 293 N.C. 731, 733, 239 S.E.2d 243, 244 (1977) (citation omitted) (emphasis added). However, in *Pleasant v.*

*Johnson*, 312 N.C. 710, 325 S.E.2d 244 (1985), we held that "the Workers' Compensation Act does not shield a co-employee from common law liability for willful, wanton and reckless negligence." *Id.* at 716, 325 S.E.2d at 249.

¶ 47        Thus, in the realm of workers' compensation, a plaintiff cannot create jurisdiction and bring a common law negligence action in superior court unless they can show that a defendant's actions rose to the level of willful and wanton conduct. Turning to this case, because N.C.G.S. § 143-291(a) gives the Industrial Commission exclusive jurisdiction over claims against the State and vests the power to determine whether alleged negligence occurred during the course and scope of a defendant's employment, a plaintiff should not be allowed to create jurisdiction in superior court merely by claiming they are suing a defendant "in their individual capacity."

¶ 48        Nevertheless, even assuming that plaintiff can bring this action in superior court, plaintiff's complaint shows that she is suing defendants in their official capacities.

> In ruling on the individual defendants' motions to dismiss, the first step is to determine whether the complaint seeks recovery from the individuals in their official or individual capacities, or both. . . . A suit against a defendant in his individual capacity means that the plaintiff seeks recovery from the defendant directly; a suit against a defendant in his official capacity means that the plaintiff seeks recovery from the entity of which the public servant defendant is an agent.

*Meyer*, 347 N.C. at 110, 489 S.E.2d at 887; *see also White v. Trew*, 366 N.C. 360, 363, 736 S.E.2d 166, 168 (2013) ("A suit against a public official in his official capacity 'is

a suit against the State.'" (quoting *Harwood v. Johnson*, 326 N.C. 231, 238, 388 S.E.2d 439, 443 (1990))).

¶ 49    When determining whether a defendant is being sued in their official or individual capacity

> [t]he crucial question . . . is the nature of the relief sought, not the nature of the act or omission alleged. If the plaintiff seeks an injunction requiring the defendant to take an action involving the exercise of a governmental power, the defendant is named in an official capacity. *If money damages are sought, the court must ascertain whether the complaint indicates that the damages are sought from the government or from the pocket of the individual defendant.* If the former, it is an official-capacity claim; if the latter, it is an individual-capacity claim; and if it is both, then the claims proceed in both capacities.

*Mullis v. Sechrest*, 347 N.C. 548, 552, 495 S.E.2d 721, 723 (1998) (emphasis added) (quoting *Meyer*, 347 N.C. at 110, 489 S.E.2d at 887).

¶ 50    The majority contends that it is "abundantly clear from the complaint that defendants are being sued in their individual capacities" because the caption and prayer for relief state that plaintiff is suing defendants in their individual capacities. While it is true that "including the words . . . 'in his individual capacity' after a defendant's name obviously clarifies the defendant's status[,]" *Mullis* makes clear that "the allegations as to the extent of liability claimed should provide further evidence of capacity." *Mullis*, 347 N.C. at 554, 495 S.E.2d at 724–25. Therefore, the allegations in the complaint itself must provide further evidence that plaintiff is suing defendants in their individual capacities.

¶ 51        By the majority's reasoning, plaintiffs who simply assert that they are suing defendants in their individual capacity can always bring suit in superior court. As illustrated above, this reasoning would allow plaintiffs to circumvent the Industrial Commission's jurisdiction to "determine whether or not each individual claim arose as a result of the negligence of any officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority[.]" N.C.G.S. § 143-291(a). If the majority is correct, any plaintiff may strip the Industrial Commission of its jurisdiction and create jurisdiction in superior court by simply adding "in their individual capacity" to their complaint. This reasoning discards the " 'crucial question' " outlined in *Mullis*: whether monetary damages are being " 'sought from the government or from the pocket of the individual defendant.' " *Mullis,* 347 N.C. at 552, 495 S.E.2d at 723 (quoting *Meyer*, 347 N.C. at 110, 489 S.E.2d at 887). Simply put, the capacity listed by a plaintiff in their complaint is not dispositive.

¶ 52        Further, the majority relies on *Mullis* for the proposition that this Court can only examine the course of proceedings when "the complaint does not clearly specify whether the defendants are being sued in their individual or official capacities." However, nowhere in *Mullis* did this Court claim that when a complaint clearly states the capacity in which the defendant is being sued, we are barred from looking to the "course of proceedings."

¶ 53 Rather, this Court stated "[t]he 'course of proceedings' . . . typically will indicate the nature of the liability sought to be imposed." *Mullis,* 347 N.C. at 552, 495 S.E.2d at 723 (alterations in original) (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)). If this Court is barred from looking to the course of proceedings, any plaintiff can circumvent the Industrial Commission by merely listing the defendants as being sued in their individual capacities in the complaint. Thus, the course of proceedings is helpful in determining the capacity in which a defendant is being sued, regardless of the capacity alleged in a complaint by an interested party.

¶ 54 Lastly, *Mullis* makes it clear that,

> it is often not clear in which capacity the plaintiff seeks to sue the defendant. In such cases it is appropriate for the court to either look to the allegations contained in the complaint to determine plaintiff's intentions or assume that the plaintiff meant to bring the action against the defendant in his or her official capacity.

*Mullis*, 347 N.C. at 552, 495 S.E.2d at 723 (quoting Anita R. Brown-Graham & Jeffrey S. Koeze, *Immunity from Personal Liability under State Law for Public Officials and Employees: An Update,* Loc. Gov't L. Bull. 67, at 7 (Inst. Of Gov't, Univ. of N.C. at Chapel Hill), Apr. 1995). Because the capacity listed in a complaint is not dispositive, this Court should consider the allegations in the complaint when making a capacity determination.

¶ 55 Therefore, "our analysis begins with answering the 'crucial question' of what type of relief is sought." *Mullis*, 347 N.C. at 552, 495 S.E.2d at 723. Here, plaintiff

is seeking to recover monetary damages. As illustrated above, "[i]f money damages are sought, the court must ascertain whether the complaint indicates that the damages are sought from the government or from the pocket of the individual defendant." *Id*. (quoting *Meyer*, 347 N.C. at 110, 489 S.E.2d at 887). To make this determination, it is appropriate for us to consider the allegations contained in the complaint and the course of proceedings to determine whether defendants are being sued in their official or individual capacities.

¶ 56 Here, the allegations in the complaint and the course of the proceedings indicate that plaintiff is suing defendants in their official capacities.

¶ 57 First, plaintiff alleges that "[a]t all times pertinent to this action, each defendant was employed by NCSU." This establishes that defendants are agents of NCSU. *See Mullis*, 347 N.C. at 553, 495 S.E.2d at 724 (finding that because the plaintiffs alleged that the defendant was an employee of the Charlotte-Mecklenburg Board of Education "[t]his allegation establishes that defendant . . . is an agent of defendant Board"). Next, plaintiff alleges that the tasks to drain and maintenance the water pipes on the chiller "were done pursuant to NCSU Facilities Operations Work Order # 17-037848." Specifically, the work order states, "Please Drain and Secure Carrier Chiller For Relocation." Nowhere in the work order is it stated that defendants were required to refill the chiller with antifreeze upon completion of their maintenance. Therefore, the substance of plaintiff's allegations show that the alleged negligence arose from defendants carrying out a work order directed by NCSU.

¶ 58        This situation is similar to this Court's analysis in *Mullis*.  In *Mullis* this Court

stated

> plaintiffs set forth only one claim for relief in their
> complaint. In the beginning of their claim for relief,
> plaintiffs allege that "the Defendant Charlotte[–
> ]Mecklenburg School System provided, permitted and
> directed the operation of a Rockwell tilting arbor saw,
> model # 34–399 in its industrial arts class." Later in the
> complaint, plaintiffs specifically allege that defendant
> Sechrest negligently failed to give reasonable or adequate
> instructions or warnings concerning the dangers inherent
> in the use of the saw and provided a machine that was
> unsafe. However, we note that it was necessary to allege
> defendant Sechrest's negligence in the complaint because
> he was acting as an agent of defendant Board in performing
> his duties. The fact that there is only one claim for relief is
> also indicative of plaintiffs' intention to sue defendant
> Sechrest in his official capacity, as an agent of defendant
> Board.

*Mullis*, 347 N.C. at 553, 495 S.E.2d at 724 (alteration in original) (citation omitted).

Here, plaintiff's only real claim for relief is that defendants were negligent in carrying

out a work order issued by NCSU.  While plaintiff alleged defendants' negligence in

failing to properly refill the chiller and warn Mr. Long, this was necessary to allege

defendants' negligence in the complaint because these employees were acting as

agents of NCSU.  *See id.* ("[I]t [is] necessary to allege defendant['s] . . . negligence in

the complaint because he was acting as an agent of defendant Board in performing

his duties.").  In essence, there is only one claim for relief because it is readily

apparent that plaintiff was suing defendants in their official capacities for the work

performed pursuant to the work order.

¶ 59        Further, the fact that plaintiff's complaints in the Industrial Commission and superior court are largely duplicative is indicative that plaintiff is suing defendants in their official capacities. In both complaints, plaintiff alleges that defendants failed to properly follow protocols when performing maintenance on the chiller before moving it outside, that they negligently put metal flanges on the ends of the water lines, and that they failed to warn Mr. Long of their failure to follow protocol. The only major difference between the complaints is that the Industrial Commission complaint listed NCSU and "John Doe" as defendants and the superior court complaint listed defendants as individuals. As illustrated above, a plaintiff should not be able to circumvent the Industrial Commission's jurisdiction and create jurisdiction in superior court by simply alleging they are suing defendants in their individual capacities. Accordingly, the duplicative nature of plaintiff's complaints further illustrates that this suit is against defendants in their official capacities.

¶ 60        Thus, "the [allegations in the] complaint, along with the course of proceedings in the present case," indicate that this case is really an official-capacity claim couched under the heading of an individual capacity suit. *Mullis*, 347 N.C. at 554, 495 S.E.2d at 725. As such, this suit is effectively one against the State. *See White*, 366 N.C. at 363, 736 S.E.2d at 168 ("A suit against a public official in his official capacity 'is a suit against the State.'" (quoting *Harwood*, 326 N.C. at 238, 388 S.E.2d at 443)). Thus, the Industrial Commission has exclusive jurisdiction to resolve this dispute, and plaintiff should be precluded from bringing this action in superior court.

Nevertheless, even assuming plaintiff's suit was against defendants in their individual capacity and the superior court had jurisdiction to hear it, plaintiff has failed to allege facts sufficient to show that defendants' actions were the proximate cause of Mr. Long's injuries. Plaintiff also failed to allege facts sufficient to state a claim for punitive damages.

> This Court reviews a trial court's order on a motion to dismiss de novo and considers "whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory[.]"

*Cheryl Lloyd Humphrey Land Inv. Co., LLC v. Resco Prods., Inc.*, 2021-NCSC-56, ¶ 8 (citation omitted) (quoting *Coley v. State*, 360 N.C. 493, 494–95, 631 S.E.2d 121, 123 (2006)).

> Dismissal under Rule 12(b)(6) is proper when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.

*Id.* (citation and quotation marks omitted).

> An allegation of negligence must be sufficiently specific to give information of the particular acts complained of; a general allegation without such particularity does not set out the nature of plaintiff's demand sufficiently to enable the defendant to prepare his defense.
>
> The complaint must show that the particular facts charged as negligence were the efficient and proximate cause, or one of such causes, of the injury of which the

plaintiff complains.

*Stamey v. Rutherfordton Elec. Membership Corp.*, 247 N.C. 640, 645, 101 S.E.2d 814, 818 (1958) (cleaned up).

¶ 62      This Court has stated

> [t]he fact that the defendant has been guilty of negligence, followed by an injury, does not make him liable for that injury, which is sought to be referred to the negligence, unless the connection of cause and effect is established; and the negligent act of the defendant must not only be the cause, but the proximate cause, of the injury. The burden was therefore upon the plaintiff to show that defendant's alleged negligence proximately caused his intestate's death, and the proof should have been of such a character as reasonably to warrant the inference of the fact required to be established, and *not merely sufficient to raise a surmise or conjecture as to the existence of the essential fact.*

*Byrd v. S. Express Co.*, 139 N.C. 273, 275, 51 S.E. 851, 851–52 (1905) (emphasis added) (citation omitted). In defining proximate cause, we have said

> [p]roximate cause is a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have *reasonably foreseen* that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed. Foreseeability is thus a requisite of proximate cause, which is, in turn, a requisite for actionable negligence.

*Hairston v. Alexander Tank & Equip. Co.*, 310 N.C. 227, 233, 311 S.E.2d 559, 565 (1984) (emphasis added) (citations omitted).

To establish foreseeability, the plaintiff must prove that

defendant, in the exercise of reasonable care, might have foreseen that its actions would cause some injury. The defendant must exercise reasonable prevision in order to avoid liability. *The law does not require a defendant to anticipate events which are merely possible but only those which are reasonably foreseeable.*

*Bolkhir v. N.C. State Univ.*, 321 N.C. 706, 710, 365 S.E.2d 898, 901 (1988) (cleaned up) (emphasis added). Further, "[p]roximate cause is an inference of fact to be drawn from other facts and circumstances." *Hairston*, 310 N.C. at 234, 311 S.E.2d at 566.

As an initial matter, the majority diminishes the pleading requirements to sufficiently allege proximate cause. In her complaint, plaintiff asserted that "[defendants] capped the inlet water pipe and the outlet water pipe of the Carrier chiller with metal flanges when [they] knew or should have known the cooler tubes could be damaged and the water tubes and pipes could become pressurized[.]" Additionally, plaintiff alleged that "[defendants] allowed the inlet water pipe and the outlet water pipe of the Carrier chiller to remain capped when [they] knew, or should have known, pressure could build up inside the chiller[.]" However, outside of a cursory allegation that defendants' negligence was a "direct and proximate result" of Mr. Long's injuries, plaintiff failed to adequately allege that the foreseeable consequence of this negligence was that the chiller would pressurize, explode, and blow the metal flange into Mr. Long causing injury.

As the majority notes, a sign on the chiller contained a warning indicating that it was "not possible to drain all water" from the chiller and that the chiller "must be

drained and refilled with" antifreeze solution "[f]or freeze protection during shut-down." Similarly, the chiller's operating manual instructed that the chiller should be filled with antifreeze to "prevent freeze-up damage to the cooler tubes[.]" It appears that the majority is correct that defendants did not put antifreeze into the chiller. However, nothing in the work order or on the labels contained on the outside of the chiller mentioned that failing to refill the chiller with antifreeze would create a possibility of a pressurized buildup that could cause injury. In fact, the only warning mentioned on the labels was that failure to fill the chiller with antifreeze could cause "damage to the cooler tubes." Thus, the foreseeable consequence of failing to follow the chiller's warning labels is damage to the machinery itself.

¶ 65        Accordingly, plaintiff has failed allege facts sufficient to establish that defendants "in the exercise of reasonable care, might have foreseen that [their] actions" in failing to refill the chiller with antifreeze would cause some injury. *Bolkhir*, 321 N.C. at 710, 365 S.E.2d at 901. Simply put, it was not reasonably foreseeable that, in the face of the instructions on the work order and the labels on the chiller, defendants' actions would cause injury to Mr. Long. Because "[t]he law does not require a defendant to anticipate events which are merely possible but only those which are reasonably foreseeable[,]" *id.*, plaintiff has failed allege facts sufficient to establish that defendants' actions were the proximate cause of Mr. Long's injuries.

¶ 66     Lastly, the majority's holding that plaintiff adequately alleged willful or wanton conduct to bring a claim for punitive damages constitutes a dangerous reduction of the pleading requirements necessary for punitive damages in this State. Section 1D-15(a) of our General Statutes states that

> [p]unitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded:
>
>     (1) Fraud.
>
>     (2) Malice.
>
>     (3) Willful or wanton conduct.

N.C.G.S. § 1D-15(a) (2019).  Section 1D-5 defines "[w]illful or wanton conduct" as

> the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm. "Willful or wanton conduct" means more than gross negligence.

N.C.G.S. § 1D-5(7) (2019).  "[T]his Court held that it was not sufficient to state a cause of action for punitive damages to allege that the defendant's conduct was 'willful, wanton and gross' . . . . " *Shugar v. Guill*, 304 N.C. 332, 336, 283 S.E.2d 507, 509 (1981) (quoting *Clemmons v. Life Ins. Co. of Ga.*, 274 N.C. 416, 424, 163 S.E.2d 761, 767 (1968)).  Rather, a "plaintiff's complaint *must* allege facts or elements showing the aggravating circumstances which would justify the award of punitive damages." *Shugar*, 304 N.C. at 336, 283 S.E.2d at 510 (citation omitted).

¶ 67    Here, plaintiff alleged "[s]ome or all of the acts and/or omissions of defendant[s] . . . constituted gross negligence" and that "[s]ome or all of the acts and/or omissions of defendant[s] . . . demonstrated a conscious or intentional disregard or indifference to the rights and safety of others, including Joe Long, which defendant[s] . . . knew, or should have known, would be reasonably likely to result in injury or death and as such constituted willful or wanton conduct."  Outside of these allegations, plaintiff failed to set out the facts and circumstances to illustrate that defendants' actions constituted a "conscious and intentional disregard of and indifference to the rights and safety of others." *Hinson v. Dawson*, 244 N.C. 23, 28, 92 S.E.2d 393, 397 (1956).  Plaintiff's complaint, at most, alleges that defendants negligently failed to follow the warning signs on the chiller which ultimately lead to Mr. Long's injuries.  Nothing in the complaint points to any conscious disregard for the safety of others to rise to the level of willful or wanton conduct.  As such, plaintiff failed to adequately allege willful or wanton conduct.

¶ 68    The allegations in the complaint, coupled with the course of proceedings, make it clear that plaintiff is suing defendants in their official capacities, and the Industrial Commission has exclusive jurisdiction over this case.  Even assuming the superior court had jurisdiction to hear this case, plaintiff has failed to allege facts sufficient to show that defendants' conduct proximately caused Mr. Long's injuries.  Plaintiff has also failed to state a claim for punitive damages.  Therefore, the decision of the Court of Appeals should be reversed, and I respectfully dissent from the majority's opinion.

Chief Justice NEWBY and Justice BARRINGER join in this dissenting opinion.